MRS. CLARA N. COLDEN v. MRS. ABBEY BELLE COLDEN ALEXANDER, ET AL.

(Two causes with same style.)
Nos. 8053 and 8054. Decided April 14, 1943.
Rehearings overruled June 2, 1943.
(171 S. W., 2d Series, 328.)

136

*Goodspeed, McGuire, Harris & Pfaff* and *Richard C. Goodspeed*, all of Los Angles, California, *Locke, Locke, Dyer & Purnell, Eugene P. Locke*, and *McGillivray Muse*, all of Dallas, for petitioner Mrs. Clara N. Colden.

It was error for the Court of Civil Appeals to affirm the action of the district court which sustained objections to evi-

dence and in rejecting such evidence by which plaintiff sought a declaratory judgment, and in basing such action on the ground that the court, in the absence of a statute conferring such right, was without jurisdiction to render such judgment. Texas Channel & Dock Co. v. State, 133 S. W. 318; Moody v. Holcolm, 26 Texas 714; Gamel v. Smith, 21 S. W. 628; Gillian v. Mahon, 231 S. W. 712; 17 Tex. Jur. 7.

It was also error for the trial court to sustain exceptions to plaintiff's pleadings and in holding that the facts alleged were insufficient to show that the Texas property, or any part of it, was community property, and the Court of Civil Appeals erred, in refusing to pass on the propriety of the trial court's action in this respect and in holding that the widow had made an election under the will; that the widow could not maintain a suit in equity to determine whether the property was community or the separate property of the husband. Cowper v. Scott, 3 P. Wm. 119; Newman v. Newman, 1 Brown Ch. 186; Pratt v. Douglas, 38 N. J. Eq., 516; Foster v. Christensen, 67 S. W. (2d) 246; 11 Am. & Eng. Enc. of Law (2d Ed.) 97; 2 Story's Eq. 437.

*Whitaker, Perkins, Turpin & Smith,* and *Richard S. Brooks,* all of Midland, for respondents, and *Hart Johnson* and *Travers Crumpton,* of Fort Stockton, for executors, John M. Costello and others.

There is no error in the denial of an advisory judgment to determine the legal status of whether property is separate or community. Muskrat v. United States, 219 U. S. 346, 55 L. Ed. 246; Richardson v. Mayes, 223 S. W. 546; Morrow v. Corbin, 122 Texas 553, 62 S. W. (2d) 641.

There was no error in order of the court to distribute the estate, because, the property being separate as a matter of law, no election was required. Neither does separate property become community by reason of the payment by the community estate of interest upon the unpaid purchase money or of the ad valorem taxes levied upon it. Rice v. Rice, 21 Texas 58; Curtis v. Poland, 66 Texas 511, 2 S. W. 39; Dunn v. Mullan, 211 Calif. 583, 296 Pac. 604; Speer Law of Marital Rights (2d Ed.) p., 471, sec. 388.

An oral pre-nuptial contract is against public policy and is void. Johnson v. Smith, 115 Texas 193, 280 S. W. 158, McDowell v. Harris, 107 S. W. (2d) 647; Mayor v. Breeding, 24 S. W. (2d) 542.

MR. JUSTICE CRITZ delivered the opinion of the Court.

The above-entitled and numbered causes constituted two separate suits in the District Court of Pecos County, Texas. No. 8054 is a probate proceeding appealed from the county court of Pecos County, Texas, to the district court of that county. No. 8053 is a civil suit filed directly in the district court of Pecos County. The parties to both causes are the same, and the issues are so closely related and intermingled that the two causes were tried together in the district court. There was no consolidation of the causes, however. Separate records were made, separate judgments were entered, and separate appeals were perfected to the Court of Civil Appeals and to this Court. We dispose of both appeals in this Court by this opinion.

At the time of his death Charles J. Colden was a resident citizen of the State of California. He died possessed of a considerable estate, located in Texas and California. The estate in California, and subject to the jurisdiction of the courts of that state, consists of both real and personal property. The estate in Texas consists only of Sections 40, 80, 82, 86 and 92 in Block 10, Houston & Great Northern Railroad Surveys in Pecos County, Texas. Each section contains 640 acres of land, and the five sections constitute one continuous tract. This land is as yet unpatented, and the State owns the minerals therein. It was sold on June 4, 1909, by the State, to Roy G. Stackhouse, for a consideration of $4.01 per acre. Ten cents per acre was paid in cash, and the purchaser executed his obligation to the State to pay the balance, $3.91 per acre, in forty years, with interest at three per cent. per annum, payable annually. The title to the above-described land passed by mesne conveyance, of course subject to the rights of the State, into one F. Hamill. On August 21, 1912, F. Hamill, "an unmarried spinster," conveyed this land to Charles J. Colden. It was recited in this deed that Charles J. Colden took title subject to the indebtedness of $3.91 per acre due the State of Texas, with interest from November 1, 1911. Colden died with the principal of this indebtedness unpaid. We assume that the interest was paid to the time it was due. Mrs. Clara N. Colden was married to Charles J. Colden on February 12, 1914, about one and a half years after he acquired the above-described land. She lived with him as his wife until his death on April 15, 1938. The above-described land was classed as mineral land, and the title to the minerals is still in the State.

At the time of his death Charles J. Colden left surviving him the following persons, who, as will later appear, are interested in his estate and concerned in this suit:

Mrs. Clara N. Colden, his widow by a second marriage;

Charles J. Colden, Jr., his son by his marriage with Mrs. Clara N. Colden;

Abbey Belle Colden Alexander, daughter by a former marriage;

Archie John Colden, a son by a former marriage;

Joan Colden, a minor, daughter of Archie John Colden and granddaughter of testator.

Charles J. Colden died leaving a written will. Such will, omitting parts not germane to this opinion, reads as follows:

"FIRST: I direct my Executors to pay my just debts, last illness, and funeral expenses; * * *."

"SECOND: I declare that I am now married and that my wife's name is Clara N. Colden, and that our marriage took place on the 12th day of February, 1914. I further declare that I have four (4) children now living, three (3) by my former wife, and one (1) by my present wife. My three children by my former wife are a son, Archie John Colden, an adult residing in California; a daughter, Vi June Colden Hawthorne, an adult residing at Stanberry, Missouri; and a daughter, Abbey Belle Colden, an adult residing in San Pedro, California. My child by my present wife is a son, Charles J. Colden, Jr., an adult residing at San Pedro, California.

"THIRD: I declare that a portion of my estate is my separate property and a portion thereof is community property of my said wife and myself, and the facts and circumstances surrounding the acquisition of the major portion of my estate are as follows: At the time of my marriage to my said wife, to-wit: the 12th day of February, 1914, I owned the following: (1) Sections 40, 80, 82, 86 and 92, Block 10, of the H. and G. N. Railway Survey, Pecos County, Texas; (2) 240 lots (a few of which were then sold and others under contract of sale) in a tract in the City of San Pedro, County of Los Angeles, State of California, known as Colden's Breakwater Heights; (3) notes and other securities derived from business in Missouri, aggregating approximately Ten Thousand Dollars ($10,000.00) which I invested in real estate and building in Los Angeles County. Since my said marriage I have received by inheritance from my father's estate the sum of Twelve Thousand Dollars ($12,000.00) in money and an undivided one-half interest in and to one hun-

dred sixty (160) acres in Polk Township, Nodaway County, Missouri. Also I acquired from my father's estate Lots 17 and 18, Block 15, and Lot 2, Block 19, in Pecks Grande View Tract, San Pedro, California.

"Since my said marriage, I have purchased ninety-five (95) additional lots in the year 1915, in the said City of San Pedro, in a tract known as Peck's Grand View Tract, thereby making a total of three hundred thirty-five (335) lots in said City of San Pedro, which formed the basis of my estate in California. Said last mentioned ninety-five lots were purchased on contract whereunder one-sixth of the purchase price was paid in cash and the balance payable in deferred payments of one-sixth per install- ment. The first and second sixths under said contract were paid by me from resources from my separate property, principally by the sale of some of said two hundred forty lots in Colden's Break- water Heights. The remaining payments were made from pro- ceeds of sales from the entire 335 lots. I have also acquired other sundry real estate since February 12, 1914, from proceeds of the 335 lots. Since my said marriage of February 12, 1914, I have devoted my time to handling my property and particularly to building and selling houses on said San Pedro lots.

"FOURTH: I give, devise, and bequeath the following sums of money and/or property to the following persons:

"(a) My home, Lot 1, Block 34, Peck's. Grand View Tract, and all of my personal effect therein, clothing, jewelry, automobiles, silver, bric-a-brac, and household furniture and furnishings of every kind and nature to my said wife, Clara N. Colden and Charles J. Colden, Jr., provided they survive distribution thereof to them, but if they die prior thereto, this gift shall lapse and become a part of the residue of my estate.

"(a-1) My office furniture and fixtures and personal effects in my offices are bequeathed to Abbey Bell Colden.

(Subdivision (b), (c), (d), (e), (f), and (g) of Paragraph FOURTH consist of small money bequests, all of which have been paid.

"FIFTH: I give, devise and bequeath an undivided one-fifth of the remainder of my estate, real and personal, after payment of the specific bequests hereinabove mentioned, to my said wife, Clara N. Colden, which includes her share of the community property.

"SIXTH: All the rest, residue and remainder of my estate, whether real or personal, and wheresoever situated, I give, devise and bequeath as follows: An undivided one-fourth thereof to my said daughter, Vi June Hawthorne; an undivided one-fourth thereof to my said daughter, Abbey Bell Colden; an undivided one-fourth thereof to my son, Charles J. Colden, Jr., and an undivided one-fourth thereof to my daughter, Abbey Bell Colden, in trust, however, to hold and control, and to invest and reinvest the same in stocks, bonds or real estate, and to apply the income thereof monthly, for the benefit of my son, Archie John Colden, and of his daughter, Joan, provided, however, that this trust shall terminate upon the death of my son, Archie John Colden, provided further, that upon the death of my son, Archie John Colden, his daughter shall have reached the age of twenty-one years, and in the event that she shall not have reached the age of twenty-one years, then in that event, this trust shall continue in effect after the death of my son, Archie John Colden, until his daughter, Joan, shall attain the age of twenty-one years; and provided further that upon the termination of this trust, the trust fund shall be assigned and transferred to the said daughter of my son, Archie John Colden. In the event of the death of my daughter, Abbey Bell Colden, or her inability to act as such Trustee, then I direct that my son, Charles J. Colden, Jr., shall act as such Trustee. I further direct that the trustees so named shall not be required to give any bond whatsoever as such trustee.

"SEVENTH: Not germane to this opinion.

"EIGHTH: Not germane to this opinion.

"NINTH: If any devisee or legatee under this Will, or any person claiming under or through any devisee or legatee, or any other person who, if I died wholly or partly intestate, would be entitled to share in my estate, shall, in any manner whatsoever, directly or indirectly contest this Will or attack, oppose or in any manner seek to impair or invalidate any provision hereof, or shall, in any manner whatsoever, conspire or cooperate with any person or persons attempting to do any of the acts or things aforesaid, or shall settle or compromise directly or indirectly, either in or out of court, with any such contestants, or shall acquiesce in or fail to oppose such proceedings, or shall endeavor to succeed to any part of my estate otherwise than through this Will, then in each of the above mentioned cases, I hereby bequeath to such person or persons the sum of One Dollar ($1.00) only, and all other bequests, devises and interest in this Will

given to such person or persons shall be forfeited and shall be distributed pro rata among such of my devisees and legatees as shall not in any manner have participated in, and as shall have opposed such acts or proceedings. If all my devisees and legatees shall participate in or fail to oppose such proceedings, I give, devise and bequeath the whole of my estate to my heirs-at-law, according to the laws of succession of the State of California then in force, excluding all contestants and said devisees, legatees, and their successors in interest.

"TENTH : Not germane to this opinion.

"ELEVENTH : Not germane to this opinion.

"TWELFTH : Not germane to this opinion.

"THIRTEENTH : I appoint as Executor hereof, of my estate, Abbey Bell Colden, Charles J. Colden, Jr., and John M. Costello, of Los Angeles, California, to execute and carry out the provisions of this Will and hereby authorize and empower them to do and to perform any and all such acts or things necessary or required to fully execute the same and settle my estate and disbitrute my property as herein deivsed and bequeathed."

The above-mentioned will was duly probated in the State of California on June 9, 1938, and the executors named therein duly qualified as such in that State. Also, such will was duly probated in Pecos County, Texas, on August 21, 1939, and the executors named therein duly qualified as such in this State.

On April 18, 1941, two of the three executors in the probate proceedings in Pecos County, Texas, filed their final account, showing that under our laws the administration in this State was completed and should be closed.

■ On the same day that the above two executors filed their final account in the Pecos County probate court, they filed a petition for partition and distribution of the Charles J. Colden estate in Texas; which, as above shown, consists only of the five sections of land above described. The petition for partition and distribution prays that the land be partitioned and divided as in the above will provided. The petition for partition states that the above lands belong to the separate estate of the deceased. Charles J. Colden, Jr., one of the executors, did not join in the final account or in the petition for distribution. He has assumed a netural attitude throughout this controversy. He is a party to both these actions and any judgments entered will bind him.

Mrs. Colden filed motion and answer in the county court, wherein she sought to delay any action in that court on the final account and the petition of the executors for partition, until both of two suits which she had theretofore filed, one in the District Court of Pecos County, Texas, and one in a proper court in California, shall have been fully tried and disposed of. The pleadings and purposes of these two suits are set out in Mrs. Colden's motion and answer in the County Court of Pecos County, Texas, and will be more fully set forth later in this opinion. The county court overruled Mrs. Colden's motion for delay, approved the final account, and ordered partition of the above-described five sections of land as in the will of Charles J. Colden provided. Under this will Mrs. Colden was entitled to a one-fifth interest. Mrs. Colden duly appealed to the District Court of Pecos County, Texas, where the other suit above mentioned was then pending.

Mrs. Colden's petition in the case filed by her directly in the District Court of Pecos County, Texas, is very long. It comprises some thirty-one pages in the transcript, not counting many pages of exhibits, which are made parts thereof. As sufficient for the purposes of this opinion, it alleges the facts which we have already detailed. It then alleges: That plaintiff and Charles J. Colden were married in California on February 12, 1914; that they lived together as husband and wife in California until the death of Charles J. Colden on April 15, 1938; that throughout this time the community property system prevailed in both Texas and California; that such system vests a wife with a one-half interest in all property acquired by either the husband or the wife during coverture, except property acquired by gift, bequest, devise, or descent; that Charles J. Colden died testate; that the will of Charles J. Colden not only attempts to dispose of his own property and estate, but of the community estate of the testator and Mrs. Colden as well; that Mrs. Colden is compelled, under the laws of Texas and California, to make an election as to whether she will take under her husband's will, or will decline so to do and take her one-half interest in the community estate of herself and her deceased husband; that if Mrs. Colden takes under the will, she will only get a one-fifth interest in all the property above mentioned, and will be compelled to surrender her community property rights; that Mrs. Colden cannot intelligently decide whether to take under her husband's will or to refuse to do so until she is advised respectively by a court of equity in Texas and a court of equity in California as to what property in such respective states constitutes the separate estate of Charles J. Colden, and what property constitutes the community estate of herself and

Charles J. Colden. Mrs. Colden's petition then prays the court to advise her whether the above-mentioned five sections of land, located in Pecos County, Texas, constitute the separate estate of Charles J. Colden, deceased, or the community estate of the deceased and herself.

Mrs. Colden's petition in the District Court of Pecos County, Texas, also alleges that she has filed a similar suit in a proper court in the State of California, and that she cannot intelligently make an election as to whether she will take under this will or refuse so to do until the suit in Texas and the suit in California have both been decided and terminated. We will refer to this California suit later. The petition in the District Court of Pecos County, Texas, does not state what decisions by the courts of Texas and California will have to be made in order that she accept under the above will. As we interpret the petition, it simply asks the court to advise her whether or not the above-described property is the separate property of her deceased husband, or the community property of herself and said husband, in order that she may intelligently elect whether or not to take under her deceased husband's will.

At this point we call attention to the fact that the "NINTH" paragraph of this will contains a forfeiture clause against any beneficiary who contests the same either directly or indirectly. Mrs. Colden's pleadings in both of these cases refer to such clause and disclaim any intention of violating it. The trial court held that she had not done so. The Court of Civil Appeals made the same holding. Respondents in this Court are not complaining of such rulings. We therefore leave them undisturbed, without passing on the question ourselves.

We will not attempt any extended statement of the pleadings of defendants in the case filed in the district court. It is enough to say that they resisted the petition of Mrs. Colden on the ground that she sought only a declaratory or advisory judgment. The pleadings of the defendants, by cross action, ask the court to remove the cloud cast upon the title of the other beneficiaries named in the Charles J. Colden will by Mrs. Colden's contentions, and adjudge the ownership of these lands as the separate estate of Charles J. Colden, deceased.

As sufficient for the purposes of this opinion we will say that the district court entered the following judgments:

A. In the probate case, appealed from the county court to the district court, judgment was entered (1) approving the

final account of the executors and closing the estate, (2) finding that on account of the mineral values for lease purposes it was best not to now divide the above-described five sections of land in kind, they being continuous tracts, and (3) finding that the title to such land belongs to the separate estate of Charles J. Colden, and is now vested as provided in the will of said Charles J. Colden, deceased, thus finding Mrs. Colden the owner of an undivided one-fifth interest. This judgment contains other provisions not pertinent to this opinion.

B. In the civil case filed by Mrs. Colden directly in the district court, judgment was entered: (1) denying Mrs. Colden any relief on her petition, on the ground that she sought only an advisory judgment; (2) decreeing that the above-described five sections of land belonged to the separate estate of Charles J. Colden, deceased; (3) decreeing that such lands belonged to the beneficiaries of the will of Charles J. Colden, deceased, as in his will provided, thus giving to Mrs. Colden a one-fifth interest, etc.; (4) removing all cloud cast upon the title of the decreed owners of such lands by virtue of the claims of Mrs. Clara N. Colden; and (5) ordering that this judgment be certified to the county court along with the judgment in the probate court, supra. This judgment contains other matter not pertinent here.

Mrs. Colden appealed both of the above cases to the Court of Civil Appeals at El Paso. That court affirmed both judgments. Mrs. Colden applied to this Court for writ of error in each case, and both writs were granted. As already stated, the two cases are so related and intermingled that we dsipose of both by this opinion.

Only two justices took part in the decision of this case in the Court of Civil Appeals, and both filed opinions. These opinions do not agree in all their details, but both resulted in the judgment entered by that court. One opinion holds that the will of Charles J. Colden attempts to dispose of both his separate estate and the community estate of himself and wife, and that, therefore, Mrs. Colden was put to an election as to whether she would take a one-fifth interest in this land under her husband's will, or refuse to do so, and claim her one-half of the community property of herself and her deceased husband. The other opinion holds that this will makes no attempt to dispose of Mrs. Colden's interest in the community estate of herself and her deceased husband, but merely devises to Mrs. Colden a sufficient amount of the testator's property which when added to her share of the

community, will give her a one-fifth interest in the entire gross estate, both separate and community. It is our opinion that this will attempts to dispose of both the separate and the community estates, and that Mrs. Colden was put to an election as to whether she would take thereunder or refuse to do so and take only her one-half of the community property. This is the construction placed on this will by all parties to this litigation .We think that when this will is read as a whole, construed from its four corners, and each provision read and considered in connection with each other provision, it clearly demonstrates a purpose and intent on the part of the testator to dispose of both his separate estate and the community estate of himself and Mrs. Colden. This is the construction placed on this will by the District Court of Appeals of California. Colden v. Costello, 50 Cal. App. (2d) 363, 122 Pac. (2d) 959.

■ Mrs. Colden contends that the district court erred in ruling that it had no power or jurisdiction to enter the advisory judgment prayed for by her, advising her as to the status of the title of these five sections of lands,—whether they are the separate property of the estate of the deceased, or the community property of such estate and herself. Mrs. Colden then contends that the Court of Civil Appeals erred in not reversing and remanding these causes for such error. To our minds, as this record is presented to us, the law question involved has become moot. The defendants in the district court filed a cross action, in which they alleged that this land was the separate property of the Charles J. Colden estate, and invoked the jurisdiction of the court to so decree. The district court tried the issue of title, and decreed that it was in the estate of the deceased. Certainly such decree gave Mrs. Colden all the advice she prayed for, and more.

As already shown, these five sections of land were purchased by and deeded to Charles J. Colden prior to his marriage to Mrs. Colden. Mr. Colden took the title subject to a debt due the State of Texas of $3.91 per acre. This debt constituted a lien in favor of the State. No part of the principal of this debt has been paid. Mrs. Colden contends that she has become possessed of a community interest in this land because of each and all of the following facts:

(1) Because the interest due the State of Texas, at the rate of three per cent. per annum, on the debt above described, and all taxes on the above land, were paid out of the community funds of herself and Mr. Colden, from the date of their marriage to the date of his death.

(2) Because what is known as the Relinquishment Act of 1919 operated to vest her with a communtiy interest in this land.

(3) Because what is known as the Relinquishment Act of 1931 operated to vest her with a community interest in this land.

(4) Because she had a prenuptial oral agreement with Mr. Colden, by the terms of which this land became the community property of herself and her said husband.

We will dispose of each of the above contentions in the order named.

██ We overrule Mrs. Colden's first contention, supra. Article 4613, R. C. S., as amended, provides: "All property of the husband, both real and personal, owned or claimed by him before marriage * * * shall be his separate property. * * *." Under the plain language of this statute, this land was Mr. Colden's separate property before and during his marriage with Mrs. Colden; and, this being true, it must now be regarded as the property of his estate, he being dead. The fact that community funds were used to pay interest on Mr. Colden's prenuptial purchase-money debt, and taxes, during coverture, cannot alter the status of the husband's title. The character of his title, whether separate or community, depends alone upon the existence, or non-existence, of the marriage of Mr. and Mrs. Colden at the time of the incipiency of the right in virtue of which he acquired title. Speer's Law of Marital Rights in Texas, page 458; Id. 489; Id. 524; Creamer v. Briscoe, 101 Texas 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869; McClintic v. Midland Grocery & Dry Goods Co., 106 Texas 32, 154 S. W. 1157, and authorities there cited; MacRae v. MacRae (Civ. App., writ refused), 144 S. W. (2d) 320; Price v. McAnelly (Civ. App.), 287 S. W. 77; Jackson v. Jackson (Civ. App.), 258 S. W. 231. The character of property, whether separate or community, is fixed at the very time of acquisition. Law of Marital Rights in Texas, Speer, pages 458, 489, and 524, and authorities there cited. Of course, where the husband purchases land on credit before marriage, and pays the purchase-money debt after marriage out of community funds, equity requires that the community estate be reimbursed. MacRae v. MacRae, supra; Price v. McAnelly, supra. Under our laws, the income during marriage from the estate of either the husband or the wife is community. The rule of reimbursement, as above announced, is purely an equitable one. Dakan v. Dakan, 125 Texas, 305, 83 S. W. (2d) 620. Such being the case, we think it would follow

the interest paid during coverture out of community funds on the prenuptial debts of either the husband or the wife on land, and taxes, would not even create an equitable claim for reimbursement, unless it is shown that the expenditures by the community are greater than the benefits received. In this instance Mrs. Colden does not even assert a claim for reimbursement in favor of the community. In fact, she could have no interest in doing so without electing to decline to take under her husband's will. This is evident, because if she takes under the will, it is utterly immaterial to her what property is community and what is separate.

As we interpret the briefs and arguments of counsel for Mrs. Colden, they contend that, even though it should be held that the general rule is as we have announced, still she should be given a community claim in this land, on account of the interest on the prenuptial purchase-money debt of the husband, and taxes, paid out of community funds during marriage; because the purchase of this land, and the payment of the interest and taxes above mentioned, constituted a highly speculative and risky investment, and therefore equity should relieve against the strict legal rule of title. We overrule this contention. It would violate the plain words of our statute. Furthermore, such a rule would lead to such uncertainty regarding titles to lands, or other property, purchased on credit by either spouse before marriage, as would require litigation in almost all instances in order to determine the real ownership thereof.

■ As to Mrs. Colden's second contention, supra, we think that, under the undisputed facts of this record, the Relinquishment Act of 1919, 36th Leg., 2d Called Sess., Chap. 81, Arts. 5367 to 5382, R. C. S., both inclusive, has had no effect to vest Mrs. Colden with any title to this land. As already shown, the State sold this land in 1909 to one Roy G. Stackhouse, with mineral classification. Only the surface estate was sold. The title to all minerals remains in the State. The Relinquishment Act of 1919 did not alter, or attempt to alter, the status of the State's title to minerals. Also, such Act did not alter, or attempt to alter, the purchaser's title to the surface estate. So far as pertinent to this case, all that said Act did, or does, is to constitute the surface owner the agent of the State to make mineral leases. Greene v. Robison, 117 Texas 516, 8 S. W. (2d) 655; Buvens v. Robison, 117 Texas 541, 8 S. W. (2d) 664; Lemar v. Garner, 121 Texas 502, 50 S. W. (2d) 769; Shell Petroleum Corporation v. Tippett (Civ. App.), 103 S. W. (2d) 448 (writ refused); Humble Oil Co. v. Lloyd 108 S. W. (2d) 214, (writ refused). In the case

at bar it is shown that no mineral lease has ever been executed affecting this land. It follows that the Relinquishment Act of 1919, supra, cannot in any way operate to give Mrs. Colden any interest therein.

■ As· to Mrs. Colden's third contention, supra, we think that the Relinquishment Act of 1931, S. B. 310, Acts 42d Leg., Chap. 23, p. 28, can have no effect on the title to this land, because it has been determined by this Court that the Act just mentioned is absolutely and utterly void in its entirety. Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S. W. (2d) 265. An utterly void Act can have no effect to accomplish anything. Consequently the Act just mentioned can have no effect whatever on that title to this land.

■ As to Mrs. Colden's fourth contention, supra, her petition in the district court alleges that at the time of her marriage with Mr. Colden, and before, they were each possessed of property of considerable value. Mrs. Colden's petition then alleges that "shortly prior to and after the marriage of the plaintiff with the said Colden, they agreed that all items of estate owned by either and each of them at the time of their marriage, and all items into which the same might be converted, and all items acquired by either or each of them in any manner subsequent to marriage, should be treated by them as if the same were community property of them both, and that the same should constitute community property of them both, and that the same should be owned by them in equal undivided interests. Such agreement was made by them orally in the State of California, where they resided." Mrs. Colden's petition then alleges that the above oral contract was made in California; that the laws of that State sanctioned the same at the time it was made, and now do so; and that such contract was at all times acted on and recognized by her and her husband during their marriage. The trial court sustained certain special exceptions to the above pleadings, and the plaintiff declined to amend. Also, the trial court refused to hear any evidence on such pleadings. If such pleadings assert any reason why Mrs. Colden should be decreed any interest in this land, other than the interest derived from her deceased husband's will, this case must be reversed and remanded.

After a careful consideration of the above-described pleadings, we have reached the conclusion that, as applied to this case, the allegations amount to the assertion of an oral contract, made in California, which has effected ·a conveyance of this

land in Texas. There is no escape from this interpretation of Mrs. Colden's pleadings, because it clearly appears therefrom that they do not even remotely allege, or attempt to allege, an executory contract to convey the land here involved, or, for that matter, any other land.

Since it is undisputed that Mr. Colden owned this land at the time of his marriage, the above oral contract was, and is, ineffective to convey any interest therein to Mrs. Colden; because such contract plainly violates Article 1288 of our Civil Statutes of 1925. This statute was in force at the time this oral contract is alleged to have been made. As pertinent to this case, this statute requires that any conveyance of land in this State be in writing and subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing.

■ As to the allegation that this alleged oral contract was made in California, and was and is valid in that State, and therefore is enforcible in this State, we think, as applied to land or real property in this State, the laws of this State must be applied. It is the settled law of this State, as well as the law generally, that the title to real property is exclusively subject to the government within whose territory it is situated. It is the law that the title to land can be affected only by the *lex loci rei sitae* (the law of the place where a thing is situated). 9 Tex. Jur., p. 359, Sec. 8; American Law Institute Restatement of the Law of Conflict of Laws, p. 306, Sec. 215; Crossland v. Dunham, 135 Texas 301, 140 S. W. (2d) 1095; Martinez v. Gutierrez, (Com. App.) 66 S. W. (2d) 678; Ball v. Norton (Com. App.) 238 S. W. 889; Barnett v. Pool, 23 Texas 517.

As we interpret her argument, Mrs. Colden contends that, since the above-described oral contract related to land and personal property in California, and to land in Texas, and since it can be enforced in California, equity should decree its enforcement in Texas, to avoid injustice or confusion. We are unable to sustain this contention. To do so would permit the laws of another State to control the title to land in Texas. We think it would be just as logical and equitable to say that, since this oral contract cannot be enforced in Texas as to land, because contrary to our laws, equity should require that it be not enforced in California. Our final conclusion is that this alleged oral contract cannot be enforced as to land in this State. We do not know what the laws of California are in regard thereto, and

neither do we attempt to define what the courts of that State will decide regarding any property, real or personal, belonging to this estate, located therein.

Under the facts of this record, we are of the view that the Court of Civil Appeals committed no error in failing to disturb the ruling of the trial court to the effect that he had a right to dispose of these cases as though Mrs. Colden had elected to take under her husband's will. The estate was ready for closing and partition, and she ought not to be allowed to delay such closing and partition by refusing to make an election. Colden v. Costello et al 50 Calif. App., (2d) 363, 122 P. (2d) 959. This is the California suit we have already mentioned. We will again refer to it later. Furthermore, it is evident that such ruling has not injured Mrs. Colden, because this land was Mr. Colden's separate property, and she has been awarded all interest therein that could in any event be coming to her, whether she accept or refuse to accept under her husband's will.

Finally, we again refer to that part of Mrs. Colden's pleadings in the district court which allege that she has filed a suit, similar to the one filed in the District Court of Pecos County in this case, in a proper court of equity in California. It seems that the suit in California has now been fully completed, and it has been therein determined that the probate court of that State has full power to develop the facts regarding the status of the title to the properties in that State affected by Mr. Colden's will, and that when that is done Mrs. Colden must make her election in that State. The opinion then, in effect, holds that, as to the property in Texas, the courts of this State must determine the rights of these parties. We quote as follows from the California opinion, Colden v. Costello, 50 Calif. App. (2d) 363, 122 Pac. (2d) 959, 964:

"The next objection which respondent has to going into the probate court is that she would prefer to have a final judgment establishing the extent of the community and separate property of the estate before she makes her election. She cannot obtain this in the probate court because she will be required to make her election before distribution and will therefore have to elect before the court makes an order either upon a hearing to determine heirship or for distribution. In holding that all further proceedings be had in the course of the administration of the estate, we are necessarily deciding that respondent is not entitled to withhold her election until she has received a final judgment, or in fact any judgment of the court upon the com-

munity property issue. She has the right to receive full information as to the status of the property of the estate before she decides whether to take under the will. In re Estate of McCarthy, 1932, 127 Cal. App. 80, 85, 15 Pac. 2d 223; In re Estate of Dunphy, 1905, 147 Cal. 95, 104, 81 Pac. 315. This she will receive, for in the course of the proceedings which are available to her in the probate administration she will be as fully informed as the court will be as to the character of the property. We do not see how she can be entitled to more than this. She has a choice to make. The other beneficiaries do not question her right to make it, and whichever way she decides they must abide by it. They are not interfering with her decision and are willing that she shall pursue such inquiries as she may see fit to make within the probate administration. They are entitled to have their shares of the estate distributed to them without unnecessary delay. It is the policy of the law, and an indispensable one, that administration of estates in probate should be conducted with the utmost expedition. Executors and administrators must perform their duties promptly and means for compelling them to do so are readily available. Surely the right of other claimants to have their shares distributed to them promptly is superior to the privilege which respondent claims and which is accorded her by the judgment appealed from. She is not entitled to insurance in the form of a final or any judgment against error in making her choice .The judgment in this respect goes so far in her favor as to seriously invade the rights of other beneficiaries, for it cannot be questioned that respondent plans a course which would greatly delay the closing of the estate. Every right which she has will be fully protected within the probate administration in a manner which will fully respect the rights of all other claimants. Her further steps must be taken there.

"What we have said has particular reference to the laws of California. It is equally applicable to the Texas estate. It appears that the estate there consists, in part at least, of real property. We naturally assume that the courts of Texas exercise such complete and adequate jurisdiction in the matter of the administration of estates of decedents as is commonly possessed by the courts of the several states. Our attention has been called to nothing to the contrary. The findings and judgment in the present case furnish no reason for delay in the closing of the California administration while respondent prosecutes an equitable action in Texas apart from the probate administration for the determination of her rights as surviving wife to all or a portion of the property located in that state."

It is ordered that the judgments of the district court and Court of Civil Appeals in both of the above-mentioned cases be affirmed.

Opinion delivered April 14, 1943.

Rehearing overruled June 2, 1943.