Corine Parish GUNLOCK, Appellant,

v.

Turner GREENWADE, Appellee.

No. 3238.

Court of Civil Appeals of Texas.

Waco.

June 9, 1955.

Rehearing Denied June 23, 1955.

Bowyer, Gray, Thomas, Crozier & Harris, Wm. W. Sweet, Jr., Dallas, B. F. Word, Meridian, for appellant.

Dunnam & Dunnam, Waco, H. J. Cureton, Jr., Meridian, for appellee.

McDONALD, Chief Justice.

This is a suit over the estate of M. P. Greenwade, deceased, between the deceased's only child, Turner Greenwade, and Mrs. Corine Gunlock, who kept house for

the deceased for about four years prior to his death. . Turner Greenwade will be referred to as Plaintiff and Mrs. Gunlock as Defendant.

The deceased executed a will on 31 October 1951, by which he left all he had to Defendant, and also executed a bill of sale and a deed conveying his car and 200 acre homestead to Defendant in October 1951 and August 1953, respectively.

The case involves a contest of the will by Plaintiff, consolidated with a suit by Plaintiff to cancel the deed, cancel the car transfer, to recover cattle claimed by Defendant under the will, and to recover on a charge against the land claimed by Defendant to pass to her under the deed and will. Defendant was charged with undue influence in procuring the execution of the will, the deed, and the car transfer, and is sole beneficiary under each instrument. Plaintiff's count in Trespass to Try Title was abandoned.

Trial was to a jury, which, in answer to special issues, found: 1) Deceased was unduly influenced by Defendant to sign the will. 3) That the deed to the land was not executed and delivered by deceased to Defendant. 4) That deceased was unduly influenced by Defendant to sign the deed. 5) That deceased was of unsound mind at the time he signed the deed. 7) That deceased was unduly influenced by Defendant to sign the transfer of his automobile to Defendant. 8) That deceased was of unsound mind at the time of making the transfer of his automobile to Defendant. 9) That permanent and valuable improvements were made on the land by deceased and Plaintiff's mother during her lifetime. 10) That such improvements enhanced the market value of the land. 11) That the value of the land without the improvements is $35 per acre. 12) That the value of the land with the improvements is $100 per acre. 13) That the cattle on the deceased's farm at the time of his death belonged to Plaintiff. 14) That deceased did not elect to take under the will of his deceased wife.

Upon the foregoing verdict the Trial Court rendered judgment setting aside deceased's will and denying same probate; setting aside the deed from deceased to Defendant to the 200 acres; awarding Plaintiff the cattle; awarding Plaintiff a charge of $37.50 per acre on the 200 acres ($6500); and setting aside the transfer of the automobile by deceased to Defendant.

Motions for New Trial were overruled and Defendant appeals, contending: 1) The answers to Issues 1, 4 and 7, wherein the jury found that the will, deed and car transfer were procured from deceased by Defendant by undue influence, are without evidence to sustain the findings; and the answers are contrary to the great weight and preponderance of the evidence. 2) That Issue 3, wherein the jury found that the deed was not executed and delivered by deceased to Defendant, was incorrectly submitted, and that the answer is without evidence to support it, and is contrary to the great weight and preponderance of the evidence. 3) That the court erred in orally instructing the jury to answer Special Issues 4 and 5 after the jury had returned their verdict into court without answering same. 4) That the court erred in overruling Defendant's exceptions to Plaintiff's pleading relative to an alleged contract whereby deceased was to make a will in favor of Plaintiff, and erred in admitting evidence concerning the execution of such will. 5) The court erred in rendering judgment for Plaintiff for the cattle because there is no evidence to support the jury's finding that Plaintiff was the owner thereof, and erred in admitting a bill of sale from deceased to Plaintiff to the cattle because same was too remote. 6) The Trial Court erred in rendering judgment on the jury's finding that deceased was of unsound mind when he executed the deed and the car transfer. 7) The Trial Court erred in consolidating the will contest with the suit to set aside the deed and to recover the cattle and the car. 8) The Trial Court erred in submitting Issues 9, 10, 11 and 12 relating to the inprovements on the 200 acres. 9) The Trial Court erred in rendering judgment for Plaintiff because the answers to Issues 4 and 5 are so conflicting

as to nullify one another, as are the answers to Issues 7 and 8.

Defendant's 1st contention is that the answers to Issues 1, 4 and 7 finding that the will, deed and car transfer were procured from deceased by Defendant by undue influence, are without evidence to sustain the findings, and are contrary to the great weight and preponderance of the evidence.

In the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, 1035, our Supreme Court says:

"It is impossible to lay down any hard and fast rule, or rules, which will accurately govern the question as to whether a given record contains affirmative probative evidence of undue influence. All that we can do is to announce certain general rules of law, and then in this case, as in all cases, apply such rules to the facts in the record. Law is not an exact mathematical science. No two cases are alike. Each case must stand on its own bottom as to the legal sufficiency of the facts proven. In spite of this, there are certain well known rules of law which govern in cases of undue influence.

"* * * It is rarely possible to prove undue influence by what is generally known as direct testimony. Undue influence is usually a subtle thing, and by its very nature it usually involves an extended course of dealings and circumstances. Usually a person charging undue influence must substantiate such charges by circumstances extending over a considerable length of time. It is therefore the settled rule that undue influence can be established by what is known as circumstantial, as well as direct, evidence. * * *

"* * * weakness of mind and body, whether produced by infirmities of age or by disease or otherwise, may be considered as a material circumstance in determining whether or not a person was in a condition to be susceptible to undue influence. * * *

"* * * the fact that a testator has left a will that is unnatural in its terms, and makes a difference between those who, according to natural law, ought to stand equal as to his bounty, may be considered as a circumstance * * *."

In Barksdale v. Dobbins, Tex.Civ.App., 141 S.W.2d 1035, 1038, error refused, the court says:

"* * * 'It is generally true that the exercise of undue influence in procuring the execution of a will can only be shown by circumstances. Direct evidence of such fact is rarely ever obtainable * * *.' In determining this question, 'all of the circumstances shown by the evidence should be considered, and even though none of the circumstances standing alone would be sufficient to show undue influence, if when considered together they produce in the ordinary mind a reasonable belief that undue influence was exerted in the procurement of the will, they are sufficient to sustain such conclusion.' * * * all evidence tending to support the jury finding must be accepted as true and interpreted in the light most favorable to the prevailing party." * * *

See also: Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, error refused; Moore v. Horne, Tex.Civ.App., 136 S.W.2d 638.

Our Supreme Court, in Briscoe v. Bronaugh, 1 Tex. 326, and this court in Grimes v. Mulry, Tex., 280 S.W.2d 343, in speaking on this subject, said:

"In such a case, it is not enough that it is not clear that the verdict is right, but it must clearly appear that it is wrong, to induce the court to set the verdict aside."

In addition to the factors of: 1) physical and mental condition of testator, and 2) the unnaturalness of the will, (set forth in the Long case, supra) our courts have held that the following additional

factors have a probative bearing on the issue of undue influence: 1) Opportunity afforded to the alleged wrongdoer to control decedent's act. 2) Activity on the part of the alleged wrongdoer in procuring the execution of the writing. 3) Facts attending preparation and execution of the instrument. See 44 Tex.Jur., Sec. 43 et seq.

Measured by the foregoing rules and factors, we come now to consider the record, indulging every presumption in favor of the jury's findings, to determine whether there is sufficient evidence to sustain the finding of undue influence.

The record reflects the following facts:

The deceased's wife died in April 1948, and about a year later the deceased employed Defendant as his housekeeper. She then moved in with him in such status on his 200 acre homestead. She was the only person in the house with deceased, and he paid her $170 to $180 per month wages. After the death of deceased's wife, deceased made an agreement with Plaintiff, his only child, under which he agreed to execute a will leaving the 200 acre homestead to his son, as requested by the will of his deceased wife, in consideration of his son's agreement that he could have the use of his son's 596 adjoining acres rent free during the remainder of his life. Plaintiff carried out his agreement and permitted his father to use his 596 acres rent free until he died. Dr. Crosthwait testified that during the last four years of deceased's life he was suffering with enlarged prostate and arteriosclerosis resulting in high blood pressure and general deterioration, and when he last saw deceased in 1951 he was of unsound mind. Four other witnesses testified that in 1951 deceased was of unsound mind; among them were neighbors, a Meridian druggist, and the Sheriff of Bosque County. After the death of deceased on 6 August 1954, Defendant produced and filed for probate the will executed by deceased on 31 October 1951, devising her all of his estate. Her attorney herein filed for record a deed dated 13 August 1953, conveying deceased's 200 acre homestead to her. H. J. Cureton, attorney of Meridian, had advised and represented deceased in all of his legal matters until 1951, when the will was executed, and good relations had always existed between the two. Her attorney herein testified that he was attorney for Defendant's sister and that it was through this connection that he was called upon to prepare the will. He testified that Defendant brought deceased to his office in Dallas, where the will was prepared and executed. He testified that in response to a telephone call from Whitney by either Defendant or deceased (he would not state which) he took a portable typewriter and drove from Dallas to Whitney on 13 August 1953, and there prepared and had deceased execute the deed to Defendant. Her attorney herein admitted that his notarial certificate on the instrument that deceased appeared before him in Dallas County to execute same was false. He further testified that Defendant always drove deceased's car wherever she took him. On 8 October 1951 title to deceased's automobile was transferred to Defendant. Her attorney herein would not testify whether he assisted in this transfer or not. Defendant had the car insured in her own name before title was ever transferred to her. On 7 December 1951 the beneficiary of deceased's life insurance policy was changed to his estate so that it would pass to Defendant under the will, she having no insurable interest required of a beneficiary. Her attorney herein admitted helping prepare the application for the change in the presence of Defendant. On 26 March 1952 Plaintiff's brand was recorded in the Brand Book of Bosque County under the name of deceased. Defendant claimed all cattle on deceased's 200 acres and on the 596 acre tract of Plaintiff bearing Plaintiff's brand as hers under the will. Shortly after the death of deceased, Defendant stated that she did not know about the will, though her attorney herein testified she was present when it was discussed and signed in Dallas. The record shows that after Defendant moved in, deceased in anger drove from his place Dr. Crosthwait, his physician and personal friend of 12 years, without giving any reason for his conduct. He also discharged his hired man who had served him 14 years be-

cause he was late to work one morning. Without cause, he became angry and accused his local banker of altering his check in an attempt to embarrass him.

■ We believe that the jury's finding of undue influence is supported by ample evidence. Here a mentally ill and infirm old man in his late 70's was stripped of all his earthly possessions by persons who had no moral or other claim to his bounty.

The testator was aged, infirm, a victim of arteriosclerosis, mentally deteriorated; the will was certainly unnatural; the Defendant, who was sole beneficiary under the will, had all the opportunity in the world to control decedent's act; the Defendant carried him to Dallas—to a lawyer not his own, but one with whom she had a connection—to prepare the will, and the lawyer came to Bosque County to prepare the deed.

Defendant relies on Curry v. Curry, Tex., 270 S.W.2d 208, 210. The Curry case is clearly distinguishable from the case at bar on the facts. In the Curry case the court said:

"There was no testimony whatever that the grantor was weak and frail, either physically or mentally * * *. The deed made an unnatural disposition of the property only in the sense that one child was preferred over the others. * * * The prompt recording of the deed rebuts rather than supports an inference that its execution was clouded with suspicion."

In the case at bar there was abundant evidence, including medical testimony, that deceased was mentally and physically ill. No disposition of property could be more unnatural than disinheriting one's only child and grandchildren in favor of a housekeeper of only four years, who had been well paid for her services. The deed in this case was not recorded until after the death of deceased.

We believe that, considering all of the circumstances shown by the evidence, the jury findings of undue influence are not only sus-

tained, but are supported by the great weight and preponderance of the evidence.

Defendant's 2nd contention is that Issue 3, wherein the jury found that the deed was not executed and delivered by deceased to Defendant, was incorrectly submitted, and that the finding is without evidence to support it, and is contrary to the great weight and preponderance of the evidence.

■ The pleadings and evidence show that the deed was never recorded until after the death of deceased. Therefore there was no presumption of delivery because of recordation. Execution and delivery are essential elements of a valid deed. The definition given the jury by the court was approved by the Commission of Appeals in Farmers Life Ins. Co. v. Wolters, 14 S.W. 2d 58, which opinion was adopted by the Supreme Court. Attorney for Defendant, who had possession of the deed until it was recorded after deceased's death, testified: "I think he asked me to keep the deed for him." The finding is clearly supported by the evidence. See: Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471, point 9.

■ Defendant's 3rd contention is levelled at the action of the Trial Court in orally instructing the jury to answer Special Issues 4 and 5. These issues were argued to the jury. Through stenographic error the answers to Issues 4 and 5 were conditioned on the answer to Issue 3. There is no contention that Issues 4 and 5 should not have been answered. Obviously the court could have taken a pencil and scratched through the words of conditional submission. We find no error in this oral instruction, but if such exists, it is certainly harmless error.

■ Defendant's 4th contention complains of the Trial Court's action in permitting Plaintiff to plead and prove the agreement between deceased and Plaintiff. The record shows that deceased when normal was a man of high honor and principles. The fact that he violated his agreement with his son in deeding the property to Defend-

ant is strong circumstantial evidence that in so doing he was not in his normal state of mind. The pleading and proof are relevant on the issues of mental capacity and of undue influence.

■ Defendant's 5th contention is that the Trial Court erred in rendering judgment that Plaintiff was owner of the cattle, and erred in admitting a Bill of Sale from Deceased to Plaintiff. Since the jury found that the will was procured by undue influence, all the cattle would pass to Plaintiff even if they had been deceased's. Therefore, under the verdict and judgment the issue is immaterial. However, the fact that the cattle bear Plaintiff's brand as same is recorded in the Brand Records is sufficient to establish same as Plaintiff's. The Bill of Sale is admissible to show where Plaintiff acquired the original stock.

■ Defendant's 6th contention is that the Trial Court erred in rendering judgment on the jury's finding that the deceased was of unsound mind when he executed the deed and the car transfer. This has been discussed at length under the Defendant's 1st contention. Suffice it to say that a druggist, a licensed and practicing physician, the Sheriff, and several neighbors testified that deceased was of unsound mind. This created an issue for the jury, which was resolved against Defendant.

Defendant's 7th contention is that error was committed in consolidating the will contest with the suit to set aside the deed and car transfer.

■ The will case was brought by Plaintiff against Defendant to set aside deceased's will on the ground of undue influence. The deed and automobile suit were brought by Plaintiff against Defendant to set aside the deed and car transfer on the ground of undue influence. All the evidence admissible in either suit would have been admissible in the other to show the relation and the scheme of the persons involved. The parties and evidence in both cases would have been the same. We hold that the Trial

Court committed no error in consolidating these two causes. See Rules 1, 51 and 174, Texas Rules of Civil Procedure; Wilson v. Ammann & Jordan, Tex.Civ.App., 163 S.W. 2d 660. Rule 51(b) provides that "Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action." Plaintiff would have no right to set aside the deed and car transfer until after the will be set aside. Therefore his suit to cancel the deed and car transfer were cognizable only after he acquired a justiciable interest by setting aside the will, and the two causes by the same parties were thus properly joined.

Further, this record as a whole discloses that while the Trial Court entered an order consolidating the two cases, *that it in fact tried the issues in each of the causes of action.* The parties to each case are the same; the issues are so closely related that evidence is equally applicable to both cases; and we see no injury to Defendant from the course followed. Moreover there is no substantial conflict in what actually took place in this case with the course followed in Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328. In that case the two causes of action were tried concurrently, and two judgments were entered. Here each cause was in fact tried concurrently and while only one judgment was entered, an examination of it discloses that it is severable as to each of the two causes of action involved.

Defendant's 8th contention complains of the Trial Court's submission of issues as to the improvements on the 200 acres. In view of what has been said, these issues become immaterial. However, we hold that the issues were properly submitted and that the findings thereon are supported by sufficient evidence.

■ Defendant lastly contends that the answers to Issues 4 and 5 and to 7 and 8 are conflicting. We hold there is no conflict in the finding that a person was unduly influenced with the finding that such person is also of unsound mind. See: De Borde v. Bryan, Tex.Civ.App., 253 S.W.2d 63.

It follows that all of Defendant's points and the contentions made thereunder are overruled, and the judgment of the Trial Court is affirmed.