**Ray L. BATMAN et al., Plaintiffs-Appellees,**

v.

**A. A. CAMERON d/b/a Cameron Oil Company, Defendant,**

**Aubrey Fariss, Dallas C. Biggers, et al., Defendants-Appellants.**

**No. 26966.**

United States Court of Appeals Fifth Circuit.

June 16, 1969.

Rehearing Denied July 14, 1969.

Hal D. Leaming, Smith, Leaming & Swan, Oklahoma City, Okl., for defendants-appellants, Aubrey Fariss, Dallas C. Biggers, and Jay Simmons, Ex'rs of Estate of A. A. Cameron, Decd.

Ronnie Gaines, Jack M. Allen, Perryton, Tex., for plaintiffs-appellees.

Before BELL and THORNBERRY, Circuit Judges, and CHOATE, District Judge.

PER CURIAM:

As this case poses a choice-of-law problem, parties and events will be identified with states. Ray Batman, the plaintiff-appellee and a Missouri resident, negotiated at his home in Missouri with a representative of the Cameron Oil Company for the sale of Texas oil and gas leases owned by Mr. Batman

and his relatives, also Missouri residents. The Cameron Oil representative, Mr. J. V. Lindley, was from the company's Oklahoma City office, but Cameron did business in Texas and California as well. Mr. A. A. Cameron, now deceased, was a California resident. Contending that the negotiations had resulted in a valid contract of sale which Cameron Oil was refusing to recognize, Batman filed suit for specific performance in a Texas federal court. The court, applying Texas law, held that a binding contract for sale of the oil and gas leases had been consummated and accordingly entered judgment for plaintiffs in the amount of $34,794. We affirm.

■ The assignments of error raise three issues, the first of which is whether the record establishes the basic elements of a contract. In our view, the record amply supports the trial court's fact findings to the effect that Mr. Lindley made an offer to buy which Mr. Batman later accepted in the exact manner designated by the offeror. Upon receiving instructions from A. A. Cameron to attempt to acquire Texas oil and gas leases owned by Batman and his family, a Mr. Hobson, head of Cameron's Oklahoma City land office, sent J. V. Lindley to Grain Valley, Missouri to confer with Batman. At the conclusion of their conference, Mr. Lindley, according to his own testimony, *offered to buy* mineral leases from Batman for $30 per acre and handed Batman unsigned leases with a draft attached in the amount of $34,794. He told Batman that if he decided to accept he should make such technical changes in the instruments as were necessary, obtain execution from the other members of his family, and then deliver the executed leases with draft attached to his Missouri bank with directions that they be forwarded to Mr. Cameron's Oklahoma City bank. Batman decided to accept and followed Lindley's instructions to the letter. When the Oklahoma City bank submitted the instruments to Mr. Cameron, he refused delivery of the leases and payment on the draft. Despite his last minute rejec-

tion, however, the record demonstrates that a contract came into being when Batman, following the offeror's instructions, completed his act of acceptance by depositing the leases and draft with his Missouri bank. Thus, appellant argues to no avail that the transaction lacked mutuality because under banking custom Batman could have withdrawn the leases and draft at any time before Cameron made payment. Regardless of what the banks would have permitted him to do, his act of acceptance completed the contract. At that point, each side became bound and each became subject to a suit for specific performance.

■ The second issue is whether J. V. Lindley had actual or apparent authority to make a binding offer for the purchase of mineral leases. Again, we find ample evidence to support the trial court's finding that he had both actual and apparent authority. The record indicates that he held himself out as having authority to make an offer and that he did not in any way suggest that the deal would be subject to A. A. Cameron's approval. Moreover, the evidence indicates to us that he had actual authority to make an offer and give the unsigned leases with a draft to the offeree since Hobson and another Cameron agent had followed this practice in the past and Mr. Cameron had always honored the drafts. His only apparent reason for reneging in this instance was that he had drilled a dry hole in Ochiltree County, Texas where Batman's leases were located.

■ The final question, the one which poses a choice-of-law problem, is whether Lindley was required to have written authority to act as Mr. Cameron's agent. He did not have it. The contract was made in Missouri and the parties agree that the Missouri Statute of Frauds requires an agent to have written authority from his principal to purchase a real property interest. On the other hand, the real property interest is located in Texas and the Texas Statute of Frauds makes no such requirement. Assuming that a Missouri

court would apply its Statute of Frauds in such a way as to permit a California resident to get out from under his contract with a Missouri resident, it then follows that there is a conflict between Missouri and Texas law because it is clear that the contract is enforceable under Texas law. The trial court held that a Texas court would apply Texas law to a contract involving a Texas real property interest and we agree. In Colden v. Alexander, 1943, 141 Tex. 134, 171 S.W. 2d 328, 335, the Texas Supreme Court held that "title to land can be affected only by [the] lex loci rei sitae (the law of the place where a thing is [situated])." In that case, a husband and wife, both California residents, had made an oral agreement in California to convey the separate property of each to the community estate. Some of their real property was located in Texas. As to the Texas property, the Texas court held the contract to be void because Texas law requires a contract to convey a real property interest to be in writing. The oral agreement would have been valid in California. Thus, Texas law controls a contract to convey a real property interest located in Texas and under the controlling law Lindley was not required to have written authority to act as Cameron's agent.

Affirmed.