ESTATE OF ANNIE FEDER, JACK M. FEDER, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42216.    Filed April 12, 1954.

*Norman A. Eisner, Esq.*, for the petitioner.
*Charles W. Nyquist, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* This proceeding involves an estate tax deficiency of $4,300.01 determined against the estate of Annie Feder (sometimes hereinafter referred to as decedent).

The sole issue is whether the estate is entitled to a deduction under section 812 (b) (3) of the Code [1] of $30,000, which sum decedent held as trustee for her son and daughter at the time of her death, when no claim for such sum was filed against the estate by the son or daughter who chose, rather, to accept payment therefor by taking as the two residuary legatees under decedent's will. Other adjustments made in the deficiency notice have not been contested and will be taken into account under a Rule 50 computation.

All of the facts were stipulated, are so found, and are incorporated herein.

Jack M. Feder (hereinafter referred to as petitioner) is the duly appointed, qualified, and acting executor of the will of Annie Feder, deceased. The estate tax return was filed with the collector of internal revenue for the first district of California.

Decedent was the daughter of Emilie Cohn, and the mother of two children—Emilie Lichtenstein and petitioner.

Emilie Cohn died on December 28, 1923, leaving a will which was probated in the Superior Court of the State of California in and for the City and County of San Francisco. By the terms of the last will and testament of Emilie Cohn, $15,000 was left in trust with Emile E. Kahn and Annie Feder, as trustees, for the benefit of Emilie Lichtenstein, and $15,000 was left in trust with the same trustees for the benefit of petitioner. Emile E. Kahn refused to act as trustee, and by the decree of distribution made and entered in the Estate of Emilie Cohn on October 28, 1926, $30,000 in 2 separate trusts of $15,000 each was distributed to Annie Feder as trustee for the benefit of her children, the grandchildren of Emilie Cohn.

Under the terms of the will and decree of distribution in the Estate of Emilie Cohn, the trust for the benefit of each of her grandchildren terminated when he or she arrived at the age of 35 years, and each grandchild thereupon became entitled to receive the trust estate estab-

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

    (b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

       \*       \*       \*       \*       \*       \*       \*

    (3) for claims against the estate,

       \*       \*       \*       \*       \*       \*       \*

as are allowed by the laws of the jurisdiction, whether within, or without the United States, under which the estate is being administered,  \*  \*  \*

lished for him or her. Petitioner reached the age of 35 on May 8, 1936, and Emilie Lichtenstein reached the age of 35 on May 7, 1942.

During her lifetime, decedent invested the trust funds received from the estate of her own mother, Emilie Cohn, together with funds of her own in income producing real properties, title to which was taken in her own name. Decedent used the income from the properties for her personal living expenses, to defray the upkeep of the properties, and to reduce the incumbrances thereon. Decedent never rendered any accounting of the 2 trusts. No part of the corpus or income of the trusts was ever paid or distributed to her children except that after each child reached the age of 35 years, decedent paid each child in cash an amount equivalent to interest at rates varying from 4 per cent to 6 per cent per annum on the amount of $15,000, or allowed each child occupancy of residental property free of rent, the rental value of which property was equivalent to interest on $15,000 at the above mentioned rates. Decedent continued to pay interest or to allow its equivalent in rental value to her children until the time of her death. The real properties, in which the trust funds were invested, were owned by decedent at the time of her death, and were included in her gross estate. She, at all times during her lifetime, acknowledged that said children were entitled to the money received in trust by her, and that she was obligated to pay the same to them. She did not, at any time, segregate the trust monies received by her from her own funds. No fiduciary income tax return was filed by decedent, at any time, in connection with her administration of the trusts.

Decedent died on December 13, 1948. By her will, she bequeathed several pieces of diamond jewelry to her daughter together with certain household furnishings. Petitioner was bequeathed the rest of her household furnishings and his wife other diamond jewelry. Decedent bequeathed 2 apartments in San Francisco to her daughter and petitioner with the provision that within 5 years petitioner might buy the daughter's interest for the sum of $7,000. She acknowledged the $15,000 trusts which she held for petitioner and his sister. Her will, however, made no provision for specific payments on behalf of the $15,000 trusts, but provided instead that the son and daughter were to take equally the residue of her estate which had a value of approximately $85,000. Emilie Lichtenstein's share was to be held in trust during her life by petitioner. She was to receive all income from the trust; the corpus was to go to her children. The will further provided that if either beneficiary filed any claim against the estate, all devises and bequests to and for the benefit of such beneficiary should thereupon ipso facto be revoked and annulled. Decedent's estate has been distributed in accordance with the provisions of her will. Each heir accepted the distribution made thereunder, and filed no creditor's claim against the estate.

On the estate tax return, decedent's gross estate was reported to be $110,397.34. Among deductions of $40,806.33 claimed on the return was one of $30,000 representing debts of $15,000 each owed to decedent's son and daughter. In his deficiency notice, respondent disallowed such deduction on the grounds "that the two children presented no claims against decedent's estate during the period of administration and that the estate did not pay the claims; but, rather, that the children relinquished and waived whatever rights they possessed as creditors in order to permit them to take the residue of decedent's estate under her will." Petitioner argues that the $30,000 which his mother held as trustee for him and his sister gave rise to valid and enforceable claims against her estate; that it was unnecessary for the claims to be formally presented and paid to be allowed; and that their election to take as residuary legatees was a means of paying the claims and did not constitute a waiver thereof.

Respondent's argument, that by taking as residuary legatees under the will petitioner and his sister extinguished any claim which they had against the estate, does not recognize what actually happened. When petitioner and his sister elected to take the residue of decedent's estate, and did not file claims for the $30,000 which their mother had held in trust for them, they did nothing more than accept payment of their claims in the manner in which she chose to pay them.

The penalty which decedent, in her will, attached to a formal presentation by her son and daughter of their claims does not change the fact that the claims existed on the date of her death and that they were paid—not waived—by distribution of her estate to them according to the explicit terms of her will. The net value of their residuary legacy was the total amount they received less the $30,000 which already belonged to them, and the net value of their mother's estate must be determined exclusive of that amount as a debt owed to them.

There is no question that decedent was trustee of $30,000 belonging to her son and daughter on the date of her death, or that their right to such sum was a valid and enforceable claim which they had against her and which she recognized by her will. To qualify as a deductible claim under section 812 (b) (3) of the Code, it is not necessary that the claim against the decedent be formally presented and paid by the executor or administrator of the estate. *Estate of Walter Thiele*, 9 T. C. 473 (1947). In that case, decedent owed the estate of his wife a sum of money at the time of his death. No claim was presented in behalf of the wife's estate, since decedent was her sole legatee. The question before us was whether decedent's estate was entitled to a deduction, under section 812 (b) (3), for the amount which decedent owed to his wife's estate. We held that his estate was entitled to a deduction of the claim on the grounds that it represented his personal

obligation, which existed at the time of his death, and was enforceable against his estate.

The facts of the case before us make an even more persuasive argument that the claims here in question are properly deductible under section 812 (b) (3).

The cases which respondent cites are distinguishable on their facts from the *Thiele* case, *supra*, and the one before us here. The case of *Jacob A. Jacobs, et al.*, 9 B. T. A. 636 (1927), affd. 34 F. 2d 233 (C. A. 8, 1929), strongly relied on by the respondent, concerns an option exercised by the widow to take a life estate under her deceased husband's will, rather than a lump-sum payment pursuant to an antenuptial agreement. We held there that the estate was not entitled to a deduction for the amount specified in the antenuptial contract as a claim against the estate. The case is also distinguishable because there the amount paid to the widow became payable only on the death of her husband; and, if the wife had died first, her estate would have had no valid enforceable claim against him. The shifting of the economic benefits occurred because of the death of the husband, and not at the time of the execution of the antenuptial agreement, because thereunder the wife acquired no property rights unless the agreement matured and became effective by her survival of her husband. *Empire Trust Co.* v. *Commissioner*, 94 F. 2d 307 (C. A. 4, 1938), affirming 35 B. T. A. 866 (1937).

The claims of decedent's son and daughter here were valid, enforceable ones which could have been collected prior to her death and which the son's and daughter's estates could have enforced had they predeceased their mother.

Respondent attempts to distinguish the *Estate of Walter Thiele, supra*, and an earlier case, *Buck* v. *Helvering*, 73 F. 2d 760 (C. A. 9, 1934), on the grounds that in those cases the claimant received a sum as great or greater than the amount of his claim. He argues, with respect to decedent's daughter, that she did not receive the equivalent of $15,000. The record shows that Emilie Lichtenstein received outright several pieces of diamond jewelry, an apartment having a value of not less than $7,000, and several items of household furnishings. She was 41 at the date of her mother's death. The value of the estate, including her and her brother's claims but after other deductions, was approximately $100,000. In the absence of evidence to the contrary, we think the record establishes a prima facie showing that the value of Emilie Lichtenstein's share of the estate was in excess of her claim of $15,000.

Respondent, therefore, erred in disallowing a deduction of $30,000 from decedent's estate as a claim against it under section 812 (b) (3) of the Code.

*Decision will be entered under Rule 50.*