Estella K. McCURDY, Appellant,

v.

David Eugene McCURDY, Independent Executor and Trustee under the Will of Royce Weldon McCurdy, Deceased, Appellee.

No. 4166.

Court of Civil Appeals of Texas.

Waco.

Oct. 31, 1963.

Rehearing Denied Nov. 21, 1963.

Smith, McIlheran & Jenkins, Jon Dee Lawrence, Weslaco, for appellant.

Coneway & Forrester, Harlingen, for appellee.

WILSON, Justice.

The problem we are required to solve is whether proceeds of life insurance policies issued to the insured husband before marriage naming his estate as beneficiary (a) belong to the separate estate of the husband after his death, only in proportion to the amount of premiums paid by him before marriage; or (b) belong entirely to his separate estate, with right of reimbursement to the community based on the amount of premiums paid from community funds during marriage. Appellant urges the first solution; appellee the second, adopted by the trial court, and by us.

The facts are stipulated. Insured and his wife were married August 3, 1960, and their marriage continued until his death, March 16, 1962. Both policies of life insurance were issued to the insured husband before marriage, naming his estate beneficiary. One policy was issued May 22, 1956; the other, February 13, 1959. The 1959 policy was "converted" February 12, 1962, as authorized by the original policy. The nature of the conversion is not shown. Of the total premiums on the two policies, $1094.66 was paid by the husband before marriage; $657.60 was paid during coverture from community funds. The executor named in the husband's will listed the proceeds as a part of the husband's separate estate. The widow's action against the executor sought determination of the status of the proceeds. The trial court concluded the proceeds constituted a part of the husband's separate estate and decreed that the community estate of husband and wife should be reimbursed on the basis of the payments made out of community funds for premiums. The policies are not in evidence. No issue of fraud is suggested by the parties. There is no other evidence. The pleadings allege insured's will made specific bequests of $3000 each to his widow and their two children, of $5000 to his parents, with the rest of his estate to be held in trust for the use of his parents, his brother and his widow, who is appellant here.

The problem is directly presented for the first time in this State under these facts. In all other cases we have examined which reached the question, and where the beneficiary was insured's estate, the policies were issued during marriage. Our decision is restricted to the stated facts.

In Brown v. Lee, Tex., 371 S.W.2d 694, 7 S.Ct.J., 10, The Supreme Court said that by amendment of the definition of "property" in Art. 23(1), Vernon's Ann.Tex.Stats., to include "life insurance policies, and the effects thereof", the Legislature has "aligned Texas with other community property states in adhering to the theory that the right to receive insurance proceeds payable at a future but uncertain date is 'property.' Such property is said to be in the nature of a chose in action which matures at the death of the insured". In that case, however, the policy was also issued during coverture.

In approaching solution to this problem we must look somewhat beyond the immediate consequences of decision in this case. A dominant factor in our conclusion is an effort, within the broad principles of dissonant precedent, to fit life insurance proceeds under the present facts to the pattern of Texas community property law as applied to other types of property. This the Legislature has apparently sought to do by amending Art. 23, Sec. 1.

That pattern, as to realty, title to which is acquired before marriage, and a portion of the consideration for which is thereafter paid from community, fixes the character of title at the time of its inception or acquisition. It "depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right in virtue of which the title is finally extended." Creamer v. Briscoe, 101 Tex. 490, 109 S.W. 911, 912, 17 L.R.A.,N.S., 154, 130 Am.St.Rep. 869. In such a case as this, realty is held to be the husband's separate property. Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328, 334.

The Supreme Court of Louisiana had settled the present problem in 1886 in In re Moseman's Estate, 38 La.Ann. 219, by holding that where a life insurance policy was acquired before marriage, payable to the insured husband's estate, under community property law the right to proceeds remained the insured's separate estate, as vested before marriage, notwithstanding part of the premiums were paid thereafter from the community. Twelve years later Chief Justice Gaines utilized that very holding to establish the analogy to realty similarly acquired, Welder v. Lambert, 91 Tex. 510, 44 S.W. 281, 284; and to sustain the holding that a fixed contract right acquired before marriage was property the "character [of which] takes its impress from the date of the contract." The Texas pattern is not generally different as to personalty. Schmidt v. Huppman, 73 Tex. 112, 11 S.W. 175. See Hilley v. Hilley, 161 Tex. 569, 342 S.W.2d 565, 568.

The grappling by Texas courts with the community property aspects of life insurance has been admirably analyzed by William O. Huie, 5th Ann.Taxation Conf., II Texas Institutes, 104, 109 (1957), 17 Tex.L. Rev. 121, 146; 18 Tex.L.Rev. 121, 147 (1940); by Judge Wisdom, Commissioner of Int. Rev. v. Chase Manhattan Bank, 5 Cir., 259 F.2d 231, cert. den., 359 U.S. 913, 79 S. Ct. 589, 3 L.Ed.2d 575; and by George E. Ray, 26 Tex.Bar Journal 835. It is not necessary to repeat the analysis.

Why do we not adopt the California solution formula of proportionate premium payments suggested by the respected author of the first cited treatises? California has done what we think should here be done; it has made its solution as to life insurance proceeds consonant with its other community property law. In Modern Woodmen of America v. Gray, 113 Cal.App. 729, 1931, 299 P. 754, where it first considered the problem, the California court stated it would apply the apportionment method so as to follow the California rule as to realty: that the inception of title doctrine does not apply (citing Vieux v. Vieux, 80 Cal.App. 222, 251 P. 640, where the latter principle was reflected). In Forbes v. Forbes, 118 Cal.App. 324, 257 P.2d 721, 722, the same court confirms its reason: "Contrary to the rule adopted in most community property states, under which the community has only the right of reimbursement for payments made with community funds", it is stated, "California gives to the community a pro tanto community property interest in such property in the ratio" which the separate and community payments bear to each other in the case of other types of property; and "[t]he same rule has repeatedly been applied in the case of life insurance policies procured by the husband before marriage." Apparently Washington also has followed its general tracing rule, see Jacobs v. Hoitt, 119 Wash. 283, 205 P. 414; In re Coffey's Estate, 195 Wash. 379, 81 P.2d 283, 286.

We think our decision harmonizes with what is said to be elsewhere the general rule: "If either spouse before marriage procures a policy of life insurance on his own or another's life, in his favor or in favor

of his estate, the policy and its proceeds are his separate property. His rights to the proceeds date from the policy." McKay, Community Property (2d ed.) Sec. 479, p. 316. It is consistent with the holdings of the Supreme Court of New Mexico, In re Miller's Estate, 44 N.M. 214, 100 P.2d 908, 910 syl. 2; and of Louisiana, In re Moseman's Estate, 38 La.Ann. 219.

Two reasons for applying the tracing principle to give proportionate ownership of proceeds are suggested, II Texas Institutes, supra, 111: (a) simplicity; (b) just results. These are good reasons, and we have carefully considered others. It does not appear that the inception of title rule is less simple: each method requires computation of the amount of premiums paid out of community funds. Many incidental problems resulting from attempted application of the proportionate ownership rule are avoided. If simplicity be a virtue, we think the inception of title rule is simpler. It facilitates application of general principles of community property law. The inception of title rule is not less equitable in results. While in this case the proceeds which would be

proportionately attributable to the community under the tracing theory happened to exceed the community premium payments, in another case the gross premiums so paid out might well exceed the total proceeds. To permit the nature of the property to be determined by the monetary result is not necessarily equitable; and apparent inequity may result under either method, depending on the facts in each case.[1]

In II Texas Institutes, above, the query is presented: "How are orthodox principles to be applied when there is a change of marital status?" We believe the inception of title test applied to other forms of property, though arbitrary, is more conducive to uniformity and a degree of certainty under the present facts; and that (although there is much to be said for the proportionate method) this is the best method by which orthodox principles may be here applied.

In our opinion the proceeds of the policies constitute the separate estate of the deceased insured, and the community estate is entitled to reimbursement on the basis of premiums paid with community funds. Affirmed.

1. In Warthan v. Haynes, 155 Tex. 413, 288 S.W.2d 481, ¾ of the premiums on a policy issued before marriage, naming insured's estate as beneficiary, were paid before marriage; ¼ were paid from community funds. The majority did not reach the present question; but the minority, who would have held the proceeds constituted property possessed at dissolution of the marriage, urged that if the proceeds were property, they were separate property of the insured's estate, with community right to reimbursement for premiums contributed. The majority also, it appears, 288 S.W.2d at 485, would have rejected the California and Washington rule.