Beatrice Smither **PARSON**, Executrix of the Will and Estate of George W. Parson, Deceased, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

Civ. A. No. 1145.

United States District Court,
E. D. Texas,
Texarkana Division.

Jan. 26, 1970.

**1160**

C. B. Wheeler, Wheeler, Watkins, Hubbard, Patton & Peek, Texarkana, Tex., for plaintiff.

Roby Hadden, U. S. Atty., Tyler, Tex., for defendant.

## MEMORANDUM OPINION

FISHER, Chief Judge.

This is an action brought by the wife as executrix of the estate of Dr. George Parson to recover federal estate taxes which the estate has paid to the government.

Dr. George Parson died by accidental drowning on December 17, 1961, while a resident of Texarkana, Texas. At the time of his death, Dr. Parson had numerous insurance policies which are the subject of this suit for refund of taxes.

The first controversy arises as to any accident insurance policy which covered loss of limbs, etc., but which also covered for loss of life of Dr. Parson. This policy was issued on or about February 20, 1958, more than three years prior to the doctor's death. At the time this policy was issued, the doctor executed an assignment of the incidents of ownership of the policy to his wife. Payment of the $50,000 indemnity clause of the policy was made to the doctor's wife as beneficiary and owner of the policy. The doctor's estate tax return disclosed the payment of this policy as the separate property of the doctor's wife, no part of which was includable in decedent's gross estate. Upon audit the Internal Revenue Service assessed estate taxes due on one-half of the proceeds received by the doctor's wife under the policy on the basis that all premiums on the policy had been paid with community funds (stipulated) and that the purported assignment by the doctor in February 1958 was not effective to make the policy the separate property of the wife. Alternatively, the Internal Revenue Service contends that one-half of the proceeds should be includable in the doctor's estate on the basis that the transfer of the policy occurred each year upon the payment of the annual premiums, the last one being in May 1961, and the transfer was therefore within three years of the doctor's death and was made in contemplation of death within Section 2035 of the IRS Code.

The primary controversy in regard to the accident policy concerns the effect of the assignment which the doctor executed. The assignment provides as follows:

"Third Party Ownership—It is agreed by the person to be insured that all right and title to the insurance applied for shall vest in and every incident of ownership thereof may be exercised and enjoyed irrevocably without the consent of any other person by: Name of Owner *Mrs. Beatrice Smither Parson,* whose insurable interest is *wife.*"

■ The question is whether this assignment was sufficient to divest the doctor of the "incidents of ownership" of the policy as contemplated by Section 2042 of the 1954 IRS Code under which Section the Internal Revenue Service determined that one-half of the proceeds of the policy were includable in Doctor Parson's estate. Section 2042 requires that a decedent include in his gross estate proceeds of life insurance policies on which the decedent exercised either alone or in conjunction with any other person the incidents of ownership.[1]

Section 20.2042–1 of the Treasury Regulations on Estate Tax describes what is meant by "incidents of ownership:"

". . . the term incidents of ownership is not limited in its meaning to ownership of the policy in its technical legal sense. Generally speaking, the term has reference to

---

1. Although Plaintiff agues that an accident policy is not a life insurance policy within § 2042, the Supreme Court in Commissioner of Internal Revenue v. Noel, 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965) held that an accident policy which insured among other things the decedent's life, was within the meaning of Section 2042.

the right of the insured or his estate to the economic benefits of the policy. Thus it includes the right to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, etc."

■ While the test for includability is whether the decedent possessed the "incidents of ownership," this rule must be applied in the context of the state property law. Section 20.2042–1(5) of the Treasury Regulations provides in this regard as follows:

"As an additional step in determining whether or not a decedent possessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the state or other applicable law upon the terms of the policy."

■ The government argues that the law as applied to Texas community property is that a husband may possess "incidents of ownership" in an insurance policy, notwithstanding the fact that the legal title or "ownership" of the policy stands in the name of his spouse. The government contends that in such a case the wife holds title to the policy as agent for the community estate and the husband still possesses a community interest in the policy which constitutes sufficient "incidents of ownership" to require inclusion of one-half the proceeds in his estate upon his death.

The government's theory that there was not an effective assignment is primarily based on Freedman v. U. S. (5th Cir. 1967) 382 F.2d 742, in which the wife took out insurance on her life with the husband named as beneficiary. Her husband was expressly made the "owner" of the policy and signed the application as such. All premiums were paid with community funds. Upon the wife's death, the husband attempted to exclude all of the proceeds from her estate. The Court noted that under Texas law property purchased with community funds is presumed to belong to the community absent an effective gift of the property. The Court held that even though the

husband signed as "owner" the decedent wife did not perform an affirmative act which would clearly reflect an intention to make a gift of her community interest and therefore one-half of the proceeds were includable in the wife's estate.

The taxpayer argues, and we agree, that this case is distinguishable from the *Freedman* case. The Court in *Freedman* noted that the decedent had not performed an affirmative act evidencing the intent of a gift and indicated that "an instrument of assignment or deed of gift would have satisfied the evidentiary requirements of a gift." We hold that in this case Doctor Parson performed the "affirmative act" contemplated by the Court in *Freedman* when Doctor Parson executed the assignment to his wife which irrevocably transferred every incident of ownership to his wife. The effect of the assignment in this case could have no other meaning or intent than to transfer Doctor Parson's community interest in the policy to his wife. Accordingly, we hold that the assignment was sufficient to effectuate a gift of Doctor Parson's community interest and none of the proceeds of the accident policy were includable in Doctor Parson's estate under Section 2042.

■ The government alternatively contends that even if the assignment was effective to transfer the incidents of ownership, still one-half of the proceeds must be included in Doctor Parson's estate. The government's theory is that under the type of accidental death policy with which we are concerned, each time a premium payment was made the decedent was purchasing insurance for one year only. Under this theory one-half of the proceeds would be includable in the decedent's estate as a transfer under Section 2035 which requires that the decedent's estate include property transferred in contemplation of death. Further, property transferred by a decedent within three years of his death is presumed, unless shown to the contrary, to be made in contemplation of death.

■ We disagree with this contention of the government and hold it to be without merit. After the insurance policy was effectively assigned in 1958, the decedent retained no interest to transfer at the time of later premium payments. The incidents of ownership passed to the decedent's wife at the time of the assignment in February of 1958 and since this complete transfer occurred more than three years prior to decedent's death in December 1969, the transfer cannot be presumed to be one in contemplation of death within Section 2035. Further, we hold that the transfer here was not in fact made in contemplation of death within the purview of Section 2035.

` The second point in issue in this case concerns the proceeds of fourteen life insurance policies which insured the life of Doctor Parson with Mrs. Parson as the beneficiary.

It is stipulated that decedent retained the incidents of ownership of the fourteen policies in issue at the time of his death, and that premiums paid on the policies prior to decedent establishing his residence in Texas in 1945, were paid from the separate property funds of decedent and his wife; premiums paid after January 1945 were paid from the community funds of decedent and his wife. Prior to moving to Texas in 1945, the Parsons lived in Arkansas which is not a community property state.

When the estate tax return was filed, the executrix included only one-half of the proceeds of the fourteen insurance policies in the decedent's estate. The IRS assessed a deficiency asserting that the entire proceeds of the policies were includable in decedent's estate under Section 2042, which as referred to above, requires inclusion in the gross estate of the proceeds of insurance on decedent's life if decedent possessed the "incidents of ownership" at the time of his death.

The government contends that the entire proceeds were includable in decedent's estate on the basis that when the policies were obtained in a non-community property state and the first premiums were paid for from separate funds, the policies were the separate property of Doctor Parson. The Texas Courts hold that property acquired by a husband and wife in another state prior to their removal to Texas will retain the character of the ownership it had in the state from which it was removed. Reeves v. Schulmeier, 303 F.2d 802, 97 A.L.R.2d 718 (5th Cir., 1962); McClain v. Holder, 279 S.W.2d 105 (Tex.Civ.App. 1955). Further, the government contends that the Texas law regarding ownership of insurance policies was established in McCurdy v. McCurdy, 372 S. W.2d 381 (Tex.Civ.App.1963, writ refused). The *McCurdy* case held that insurance acquired before marriage for which a portion of the consideration was paid after marriage with community funds attains its character of ownership at the time of its inception or acquisition. The government argues that the *McCurdy* case is analogous to the case at bar where most of the policies though acquired after marriage were acquired in a non-community property state where the policies would be considered the decedent's separate property. Since the policies retained the same characterization of ownership when removed to Texas the government maintains that the entire proceeds were includable in decedent's estate under the "inception of title" *McCurdy* Rule.

The Plaintiff argues that although Doctor Parson retained the incidents of ownership in the fourteen life insurance policies, he retained the incidents of ownership as manager of the community estate and did not hold them for his separate estate. Contending further that the government was in error in including the entire proceeds of the policies and that only one-half of the proceeds should have been included as was done in the return or alternatively that the proceeds includable in the decedent's estate be an amount in the proportion that the sum of the premiums paid from the

decedent's separate estate, plus one-half of the premiums paid from the community estate, bear to the total amount of all premiums paid. This alternative theory is the so-called tracing principle and the Plaintiff contends that the use of the tracing principle will result in a more equitable allocation of proceeds than will the inception of title rule in estate tax cases where part of the premiums were paid for from separate property funds and part from community funds.

The tracing principle has been previously used in Texas to resolve estate tax problems. In Stapf v. U. S., 189 F. Supp. 830 (ND Tex.1960), reversed on other grounds, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), where the consideration paid on life insurance was part separate and part community, the Court rejected the government's theory that all the proceeds were includable in decedent's separate estate and also rejected was the taxpayer's contention that only one-half of the proceeds should be included in the decedent's estate. The Court decided that the tracing principle should be used:

> "Instead, the proper course is to allocate to the estate that part of the total insurance monies measured by the same proportion as the sum of the premiums paid from the decedent's separate estate, plus one-half of the premiums paid from the community estate, bear to the total amount of all premiums paid."

Although the Stapf case was reversed on appeal, it was reversed on other grounds and the Court's finding that the tracing principle should be used to tax the proceeds of the insurance was not disturbed.

The state of the law regarding estate taxes on life insurance policies on which premiums have been paid both from community and separate property funds is still unsettled in Texas. The Court feels that the McCurdy case is not binding and determinative regarding this area of the law and particularly when applied to the facts in this case. The McCurdy case involved life insurance policies taken out before marriage on which premiums paid after marriage were paid from community funds; thus, in McCurdy there was a much stronger inclination to hold the policies to be the decedent's separate property, because taken out before marriage, than in the present case where all but two of the life insurance policies were taken out after marriage. Furthermore, the McCurdy case involved the distribution of the proceeds of life insurance policies and estate tax principles were not an issue.

The McCurdy case has been justly criticized in Texas as being too arbitrary and inequitable.[2]

If applied in this case, the inception of title rule would surely bring about inequitable results. Schedule A of the Stipulation of Facts cites the percentage of premiums paid for with separate and community funds. On eight of the fourteen policies over 70% of the premiums were paid for with community funds. Only the two policies acquired before marriage were paid for with less than 50% community funds.

---

2. In a case note in 18 Southwestern Law Journal 521 the author examines the McCurdy case, concluding with the hope that application by Texas Courts of the inception of title doctrine to life insurance will be reconsidered. In a case note in 42 Texas Law Review 747, the author makes a similar conclusion:
"It is submitted that it would not be inconsistent to apply the tracing principle in life insurance situations even though the inception of title rule is applied to realty cases. On the contrary, the tracing principle has been used extensively in Texas in various situations. The fact that the inception of title rule has been applied in the realty area should not demand rigid adherence to this rule in other areas where the tracing principle will produce more just and equitable results. A more sophisticated approach would call for a weighing of consequences rather than a mechanical application of one rule in every situation purely in the interest of consistency."

The tracing principle would bring about a more equitable solution by taxing to Doctor Parson's estate only the proportion of the proceeds traceable to premiums paid from his separate property funds, plus, of course, one-half of the proceeds derived from premiums paid from community property. Accordingly, the Court holds that Doctor Parson held the incidents of ownership in the life insurance policies as agent for the community estate and that the tracing principle should be applied to determine the percentage of the proceeds which are to be included in Doctor Parson's estate.

The above and foregoing shall constitute the Findings of Fact and Conclusions of Law herein. Judgment will be entered accordingly.