Estate of Bryan Wildenthal, Deceased, E. Tom Curtis, Administrator v. Commissioner.
Estate of Wildenthal v. Commissioner
Docket No. 2492-69.
United States Tax Court
T.C. Memo 1970-119; 1970 Tax Ct. Memo LEXIS 241; 29 T.C.M. (CCH) 519; T.C.M. (RIA) 70119; May 19, 1970, Filed Michael L. Cook 12th Floor, Capital Nat'l Bank Bldg., Austin, Tex., for the petitioner. Harold Friedman, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency of $223.56 in petitioner's estate tax. Petitioner claims an overpayment of estate tax in the amount of $631.20. The two issues presented for decision are: (1) Whether under Texas law any part of the proceeds of four life insurance policies, owned by the decedent at his death and acquired by him before his marriage, but maintained after marriage with community funds, constitutes his separate property which is includable in his gross estate under section 2042, Internal Revenue Code of 1954; [1] and (2) whether under Texas law the community has a claim against the decedent's separate *242 estate for any part of the proceeds of the four life insurance policies. All of the facts have been stipulated. The stipulation of facts and exhibits attached 520 thereto are incorporated herein by this reference and adopted as our findings. The pertinent facts are summarized below. The petitioner is the Estate of Bryan Wildenthal, Deceased, E. Tom Curtis, Administrator, whose legal residence was Austin, Texas, at the time the petition was filed in this proceeding. The Federal estate tax return was filed with the district director of internal revenue, Austin, Texas. Included in the estate of the petitioner are the following proceeds of life insurance: 1. Southwestern Life Insurance Company of Dallas a. Policy No. 159100-T (actually 159108T), face amount - $5,000 b. Policy No. 164198T, face amount - $5,000 The total proceeds of these two policies amounted to $10,000, against which there was an outstanding loan of $2,339.93. Included in the estate was $3,830, one-half of the remaining balance of $7,660. 2. The Lincoln National Life Insurance Company *243 a. Policy No. 158333, face amount - $2,500 b. Policy No. 158334, face amount - $2,500 The total proceeds of these two policies amounted to $2,660.68, $1,330.34 of which was included in the estate tax return of petitioner. The four life insurance policies described above were purchased by Bryan Wildenthal on the following dates: 1. Southwestern Life Insurance Company
a. Policy No. 159108T - May 1926 b. Policy No. 164198T - August 1926 2. Lincoln National Life Insurance Company a. Policy No. 158333 - October 1924 b. Policy No. 158334 - October 1924 These four life insurance policies were acquired by decedent prior to his marriage to Doris Kellem Wildenthal on March 28, 1928. Premiums paid on the four life insurance policies were as follows: 1. Southwestern Life Insurance Company
a. Policy No. 159108T
Prior to March 28, 1928
$ 149.90
Subsequent to March 28, 1928 2,797.21
Total
$2,947.11
b. Policy No. 164198T Prior to March 28, 1928
$ 130.50
Subsequent to March 28, 1928 2,783.54
Total
$2,914.04
2. Lincoln National Life Insurance Company
a. Policy No. 158333 Prior to March 28, 1928
$ 191.10
Subsequent to March 28, 1928 1,459.56
Total
$1,650.66
b. Policy No. 158334 Prior to March 28, 1928
191.10
Subsequent to March 28, 1928 1,459.56
Total
$1,650.66
*244 Of the four life insurance policies, the total premiums paid prior to the marriage of Bryan and Doris Wildenthal were $662.60, and the total premiums paid after their marriage were $8,499.87. The total premiums paid after their marriage were paid out of the community estate of Bryan and Doris Kellem Wildenthal. Doris Kellem Wildenthal was at all times relevant to this case the beneficiary under all four of the life insurance policies and, in fact, received the net proceeds of all of the policies. The two policies of Southwestern Life Insurance Company were ordinary life insurance policies. The two policies of Lincoln National Life Insurance Company were 20-year pay life contracts. In his statutory notice of deficiency dated March 3, 1969, respondent included in the gross estate the total net proceeds of each of the policies as constituting the separate property of the decedent. In the statutory notice of deficiency the item "Debts of Decedent," listed as "$ 00.00" in Schedule D of the Federal estate tax return, is not adjusted. No claim was ever made against the estate for all or any part of the portion of the premiums on the four life insurance policies paid after March 28, 1928. *245 On the Federal estate tax return filed by the administrator the insurance proceeds from the contracts were reported as community assets. Section 2042 of the Code requires the inclusion in the gross estate of a decedent of the proceeds of insurance on the decedent's life, if the decedent possessed at 521 the date of death any of the "incidents of ownership" in the policy. [2]
*246 In this case we must first determine under Texas law what part of the proceeds of the four life insurance policies belongs in the decedent's separate estate and what part belongs in the community estate. The life insurance policies were issued to the decedent when he was a bachelor, but most of the premiums were paid with community funds. Decedent never attempted to assign the policies. Texas law with respect to this subject is, at best, confusing and somewhat contradictory. Some of the earlier cases declared that insurance policies were not "property" subject to community interests, other cases treated them as property, and still others tried to have it both ways. See the discussion in Commissioner v. Chase Manhattan Bank, 259 F. 2d 231, 244-55 (C.A. 5, 1958), certiorari denied 359 U.S. 913 (1959). The Texas legislature attempted to clarify the area by amending the definition of "property" to include "life insurance policies and the effects thereof." Tex. Sess. Laws 1957, c. 404. Prior to 1957, the cases dealing with life insurance policies issued before marriage had given the wife a community claim in the cash surrender value upon divorce, Berdoll v. Berdoll, 145 S.W. 2d 227 (Tex. Civ. App. 1940), *247 but gave her no claim, absent fraud, in the proceeds at death, Warthan v. Haynes, 155 Tex. 413, 288 S.W. 2d 481 (1956). This treatment was similar to that involving life insurance policies issued during the marriage, according to the policy-versus-proceeds analysis contained in Commissioner v. Chase Manhattan Bank, supra. The wife had a community interest in the policy, but at death the husband effected a transfer which cut off her rights. Treating life insurance policies issued before marriage like those issued after marriage was contrary to the "inception of title" doctrine which is applicable to real property law in Texas. Creamer v. Briscoe, 101 Tex. 490, 109 S.W. 911 (1908); Colden v. Alexander, 141 Tex. 134, 171 S.W. 2d 328 (1949). By that doctrine separate property does not change its character after marriage, even if community property is used to pay part of its cost. But in Berdoll a part of the cash surrender value proportionate to the premiums paid with community property was treated as community property. The Supreme Court of Texas has determined that the 1957 legislative amendment changed the law as stated in Warthan v. Haynes, supra, *248 and earlier cases. Where the policy is issued during the existence of the community: The proceeds at maturity are likewise community in character, except where the named beneficiary is in fact surviving, in which case a gift of the policy rights to such beneficiary is presumed to have been intended and completed by the death of the insured. The cases considering life insurance policies which were issued prior to the existence of the community are in conflict as to the nature and extent of the community interest in the proceeds. In Stapf v. United States, 189 F. Supp. 830 (N.D. Tex. 1960), and Parson v. United States, 308 F. Supp. 1159 (E.D. Tex. 1970), the District Courts held that the community estate was entitled to a share of the proceeds proportionate to the community contribution to premium payments. This treatment is equivalent to that accorded cash value in Berdoll v. Berdoll, supra. It seems to treat the proceeds as community property, contrary to the "inception of title" doctrine. In McCurdy v. McCurdy, 372 S.W. 2d 381 (Tex. Civ. App. 1963) (writ refused) the Court held that "the proceeds of the policies constitute *249 the separate estate of the deceased insured, and the community estate is entitled to reimbursement on the basis of premiums paid with community funds," meaning reimbursement only in the amount of premiums paid with community funds. In McCurdy the Court reasoned that the Texas legislature had intended to give the wife a claim to part of the proceeds, but 522 only to an extent consistent with the greater body of community property law in Texas. Thus, the proceeds were separate property (inception of title), subject to an equitable claim for reimbursement by the community estate (which had paid part of the consideration). Compare Wilson v. Wilson, 225 S.W. 2d 236 (Tex. Civ. App. 1949) (reimbursement for real property payments in a divorce case); Colden v. Alexander, supra (reimbursement for real property payments, after the husband's death). The principle of reimbursement announced in McCurdy has been reaffirmed in Gray v. Bush, 430 S.W. 2d 258, 267 (Tex. Civ. App. 1968). In our opinion McCurdy v. McCurdy, supra, states the correct rule in Texas. It is the most recent statement of the law in this area by the Texas courts, and it *250 is consistent with the "inception of title" doctrine and the general body of community property law in Texas. Accordingly, we conclude that the proceeds of the life insurance policies in this case are separate property, subject to a claim for reimbursement by the community estate for premiums paid with community funds. As to the second issue, respondent argues that any claim by the community estate against the decedent's separate estate would not be deductible for Federal estate tax purposes because the claim for reimbursement has not been paid and because there has been no attempt to enforce it, citing Rev. Rul. 60-247, 1960-2 C.B. 272. But we note that the revenue ruling contains the following language: As an exception to this rule, a deduction would be allowed for a claim in favor of the sole beneficiary of an estate, where the claim is not formally presented and not formally paid, but where it is clear, under the facts of the case, that the claim may be deemed to have been paid through the payment of the legacy in an amount at least equal to that of the claim. See Estate of Annie Feder, et al. v. Commissioner, 22 T.C. 30, acquiescence, C.B. 1954-2, 4. *251 It is felt that, in such a case, to compel the creditor and the representatives of the estate to make formal presentation and formal payment of the claim as a condition precedent to deduction would be to compel a series of futile acts. The same reasoning applies to respondent's argument that the community claim is absorbed because the surviving spouse is the beneficiary of the life insurance proceeds. It is true that no claim will be made by the surviving spouse. However, for Federal estate tax purposes, the existence of the claim should be recognized. Respondent's fear that recognition of the claim for reimbursement may result in a double deduction is unfounded. Only the proceeds remaining after satisfaction of the comunity claim will qualify for the marital deduction. The proceeds used to satisfy the community claim will not. Having concluded that the proceeds of the life insurance policies are the separate property of the decedent, subject to a claim for reimbursement by the community estate for premiums paid with community funds, we think the proper treatment for Federal estate tax purposes is as follows: 1. The amount of $1,820.81 should be included in the decedent's gross *252 estate as separate property. This represents the total proceeds, minus an outstanding loan, of $10,320.68 less the premiums paid with community funds of $8,499.87. 2. A marital deduction should be allowed based on the amount of $1,820.81 included as the decedent's separate property. 3. The amount of $4,249.93 should be included in the decedent's gross estate as his half of the community property. This represents one-half of the insurance premiums paid with community funds. To reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Section 20.2042-1(c)(2) and (5), Estate Tax Regs., provides: (2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. * * * (5) As an additional step in determining whether or not a decedent possessed any incidents of ownership in a policy or any part of a policy, regard must be given to the effect of the State or other applicable law upon the terms of the policy. * * *↩