# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00435-CV

**Leslie Otis Rolls, Jr., Appellant**

**v.**

**Susan D. Rolls, Appellee**

### FROM THE DISTRICT COURT OF COKE COUNTY, 51ST JUDICIAL DISTRICT
### NO. CV12-004436, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Leslie Otis Rolls, Jr. appeals from the trial court's divorce decree, complaining that the court erred in awarding appellee Susan D. Rolls half of the cash surrender value of a life insurance policy and $10,458 in attorney's fees.[1]  Because we sustain both of Otis's issues, we reverse the trial court's decree in part as explained below; we affirm the remainder of the decree.

## Insurance Policy

Otis and Susan were married in May 2002, and the trial court signed a divorce decree in April 2014.  According to the only documentary evidence related to the insurance policy (one page of an Annual Report for the period between December 18, 2010, and December 17, 2011), Otis bought a $100,000 life insurance policy from Midland Life Insurance on December 18, 1988, and

---

[1]  Because the parties share the same last name, we will refer to them by their given names.

as of December 17, 2011, the policy had a cash surrender value of $16,781.86.[2] The decree awarded Susan "One-half of the Cash Surrender Value from the Midland Life Insurance policy . . . as of November 13, 2013; said amount not to be less than $8,390.93" (one-half of $16,787.86). Otis asserts that this is erroneous because the insurance policy is his separate property. We agree.

The entirety of the scant evidence produced at trial concerning the insurance policy was: (1) Susan's testimony agreeing that she was seeking half of the community share of the policy's cash surrender value; (2) Otis's testimony agreeing with his attorney's question of whether, in his inventory of property, he "indicate[d] that ninety four oh one happened before marriage and that seventy-three eighty-one was contributed, as far as cash value, after marriage"[3]; and (3) the Annual Report, which stated that the policy had a $100,000 death benefit, that the monthly premium was $77, that the policy was worth $16,018.55 as of December 18, 2010, and $16,781.86 as of December 17, 2011, and that during the year, there were $770 in premium payments, $735.71 interest credited, $46.20 "premium load," $570.20 "cost of insurance," $54 "other charges," and $72 "riders."

Insurance policies are governed by the inception-of-title doctrine, meaning the separate or community character of a policy is determined by the time and circumstances of its

---

[2] Otis testified that he thought he had bought the policy in 1989, but there is no dispute that the policy was purchased well before the parties' marriage in 2002.

[3] In her inventory of the couple's property, Susan stated that the policy was community property. In his inventory, Otis stated that $7,381 of the policy's $16,781.86 cash surrender value was community property. However, although the parties referred to their respective inventories in their testimony, those documents were not introduced into evidence at trial and cannot be considered as evidence in our review. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied) (unless party's inventory is admitted into evidence, it may not be considered evidence of property's characterization or value); *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508-09 (Tex. App.—Austin 1994, no writ) (party's inventory is "analogous to a pleading" and may not be relied upon as evidence unless admitted at trial).

acquisition. *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001) ("Generally, whether property is separate or community is determined by its character at inception, and this general rule applies to life insurance policies."); *Loaiza v. Loaiza*, 130 S.W.3d 894, 908 (Tex. App.—Fort Worth 2004, no pet.) (Texas Constitution defines separate property as property owned before marriage); *Wohlenberg v. Wohlenberg*, 485 S.W.2d 342, 348 (Tex. Civ. App.—El Paso 1972, no writ) (describing inception-of-title doctrine as "emphatically applied to life insurance policies"). Otis's insurance policy, having been acquired before the marriage, is his separate property. *See Barnett*, 67 S.W.3d at 111; *Camp v. Camp*, 972 S.W.2d 906, 909 (Tex. App.—Corpus Christi 1998, pet. denied); *McCurdy v. McCurdy*, 372 S.W.2d 381, 383-84 (Tex. Civ. App.—Waco 1963, writ ref'd). At most, Susan could only seek a portion of the reimbursement the community estate might be entitled to for premiums paid during the marriage. *See Camp*, 972 S.W.2d at 909. "The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982).

Susan insists that Otis judicially admitted that some portion of the insurance policy was community property, pointing to his inventory, which was not admitted into evidence, and his testimony referring to the inventory. However, Otis's inventory reflecting a mistaken legal conclusion that a portion of the policy was community property cannot be considered a judicial admission.[4] *See Roberts v. Burkett*, 802 S.W.2d 42, 45 (Tex. App.—Corpus Christi 1990, no writ) ("Statements

---

[4] Even if we viewed Otis's inventory as a possible judicial admission, *see Tschirhart*, 876 S.W.2d at 509 n.1, that would mean that Susan could have objected to evidence of the separate nature of the policy. *See Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex. App.—El Paso 1985, writ dism'd). She did not do so, and we cannot ignore that the undisputed evidence, introduced by Susan herself, established as a matter of law that the insurance policy was separate property.

of opinion are not judicial admissions."); *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 668 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (opinion concerning legal effect of letter cannot be considered judicial admission "because it is not a statement of *fact*"). Further, "unless a party's inventory is formally admitted into evidence at trial, that party may not rely on the inventory as evidence on appeal." *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508-09 (Tex. App.—Austin 1994, no writ); *see Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied) ("unless a party's inventory and appraisal has been admitted into evidence, it may not be considered as evidence of a property's characterization of value"). If the unadmitted inventory cannot be considered evidence of an item's value, we do not believe it can mandate a conclusion that the policy was community property in the face of uncontroverted evidence of the policy's pre-marriage purchase date.[5]

The issue of reimbursement and any contribution made by the community estate was never raised at trial,[6] and Otis argues on appeal that Susan therefore waived any right to seek reimbursement. Susan argues that the issue was tried by consent.

In her petition, Susan asked for a just and right division of the parties' property and for all other relief to which she was entitled but made no reference to reimbursement, and Susan

---

[5] The dissent states that "the significance of Otis's sworn inventories is not that they are *evidence* of the policy's proper characterization—it is that they would serve to resolve the issue through binding admission in *lieu of* evidence." However, they were not offered in lieu of evidence. Instead, evidence was introduced, and that uncontested evidence established the contrary proposition as a matter of law.

[6] The only evidence that might be construed as relating to any community contribution was the Annual Report reflecting a $77 monthly premium and Otis's testimony that his inventory stated that $7,381 was contributed during the marriage.

4

correctly notes on appeal that a general plea for relief in divorce pleadings can support a claim for reimbursement when it is coupled with evidence and argument at trial raising the issue. *See Raymond v. Raymond*, 190 S.W.3d 77, 83 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("A prayer for general relief will support any relief raised by the evidence and consistent with the allegations in the petition.").[7] However, reimbursement was never discussed at either the final hearing or the hearing on Otis's motion for new trial. The parties discussed the insurance policy and its value but not whether the community should be reimbursed for premiums paid during the marriage, operating under a mistaken belief that some portion of the policy was community property.

Contrary to that belief, property is either separate or community; an insurance policy cannot be both separate and community property.[8] *See, e.g.*, *Vallone*, 644 S.W.2d at 458 (" a spouse may expend a reasonable amount of talent or labor in the management and preservation of his or her separate estate without impressing a community character upon that estate"); *Hilley v. Hilley*, 342 S.W.2d 565, 572 (Tex. 1961) ("marital property is thus *either* separate or community" (emphasis added)); *Barras v. Barras*, 396 S.W.3d 154, 167 (Tex. App.—Houston [14th Dist.] 2013, pet.

---

[7] *See also Jensen v. Jensen*, 665 S.W.2d 107, 110-11 (Tex. 1984) (Robertson, J., concurring) (stating that although *Vallone v. Vallone*, 644 S.W.2d 455 (Tex. 1982), "appeared to mark the beginning of a shift to a policy requiring specific pleadings in family law matters," the majority opinion in *Jensen* "announces a return to a broad construction of divorce pleadings"; "a more liberal policy for construing divorce pleadings will provide trial judges with the freedom needed to reach just decisions in complex and sensitive family law actions"); *Yasin v. Yasin*, No. 03-10-00774-CV, 2011 WL 5009895, at *5 (Tex. App.—Austin Oct. 21, 2011, no pet.) (mem. op.) ("Texas courts have traditionally maintained liberal pleading requirements in family law cases").

[8] We recognize that defined-contribution plans or similar retirement benefits can have a community "portion," but those types of benefits are accrued over time and a different analysis is applied in such cases. *See McClary v. Thompson*, 65 S.W.3d 829, 835-36 (Tex. App.—Fort Worth 2002, pet. denied) (discussing unique nature of retirement plans).

5

denied) ("Property established to be separate remains separate property regardless of the fact that it may undergo mutations or changes in form; its separate character is not altered by the sale, exchange, or substitution of the property."); *Pace v. Pace*, 160 S.W.3d 706, 711 (Tex. App.—Dallas 2005, pet. denied) ("In Texas, all marital property is either separate or community," and "[p]roperty is characterized as separate or community at the time of the inception of title. The inception of title doctrine fixes the character of certain property interests when a party first acquires a right or claim to the property; title need not be vested at such time."); *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.) ("Property is characterized as 'separate' or 'community' at the time of inception of title, that is to say, when a party first has a claim of right to the property by virtue of which title is ultimately vested," and "[w]hen real property is acquired under a contract for deed or installment contract, the inception of title relates back to the time the contract was executed, not the time when legal title is conveyed."). Thus, it was impossible for the policy to be both community and separate property, regardless of what Otis's inventory said.

Reimbursement was never discussed, and the parties did not present any evidence about how much in premiums had been paid during the marriage. Nor did Susan seek during the hearing on Otis's motion for new trial to introduce evidence about any premiums paid by the community. On this scant record, which reflects an utter lack of evidence, discussion, or argument related to reimbursement, we cannot hold that the issue was tried by consent. *See Smith v. Smith*, 715 S.W.2d 154, 156-57 (Tex. App.—Texarkana 1986, no writ); *Pruske v. Pruske*, 601 S.W.2d 746, 749 (Tex. Civ. App.—Austin 1980, writ dism'd).

The insurance policy was Otis's separate property, and Susan would at most have been entitled to seek reimbursement for the community's payment of premiums. However, because

6

reimbursement for any community contribution to the insurance policy was not raised in the underlying hearings, Susan cannot obtain reimbursement. We sustain Otis's first issue. We reverse that portion of the divorce decree and render judgment that the insurance policy is Otis's separate property.

**Attorney's Fees**

Otis next argues that the evidence is insufficient to support the trial court's attorney's fee award in favor of Susan. We agree.

Susan testified that she hired her attorney in February 2013, making a $5,000 retainer fee payment and agreeing to pay her attorney $300 an hour. She introduced into evidence an exhibit purportedly showing her attorney's fees, including preparation for work through the trial. The exhibit also reflected "the staff's fees" and expenses paid for various subpoenas. The exhibit in question is a collection of bills from April 2013 through the date of trial in November 2013 and shows a total of $10,458 incurred—$9,000 in attorney's fees, $993.75 for "staff," and $464.75 for "expenses." The exhibit is not in affidavit form or otherwise sworn. In Otis's motion for new trial and the hearing on the motion, Otis asserted that the attorney's fee award was not supported by sufficient evidence of reasonableness or necessity.

Generally, a party seeking attorney's fees has the burden of proof and must establish that the fees are both reasonable and necessary. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991); *Rowland v. Herren*, No. 03-07-00247-CV, 2010 WL 566881, at *7 (Tex. App.—Austin Feb. 19, 2010, no pet.) (mem. op.). The trial court has broad discretion in awarding attorney's fees,

but it abuses its discretion if the award is not supported by sufficient evidence that the fees were both reasonable and necessary. *Rowland*, 2010 WL 566881, at *7.

Susan did not present evidence about how long her attorney had been licensed, her attorney's qualifications, whether her attorney's rates were reasonable and in line with those charged by other attorneys in the geographical area for similar services, or whether the number of hours worked were reasonable and necessary.[9] Evidence that Susan agreed to pay a certain hourly rate and had incurred a total of $10,548 in bills from her attorney is no evidence that the fees charged were both reasonable and necessary. *See Drabek v. Cavazos*, No. 13-14-00063-CV, 2014 WL 4402501, at *3 (Tex. App.—Corpus Christi Aug. 29, 2014, pet. denied) (mem. op.) (counsel did not testify as to reasonableness or necessity of fees, and only evidence was party's testimony about amount she had agreed to pay); *Horvath v. Hagey*, No. 03-09-00056-CV, 2011 WL 1744969, at *9 (Tex. App.—Austin, May 6, 2011, no pet.) (mem. op.) (party's testimony about amount she had paid attorney was insufficient to support award of attorney's fees); *In re L.L.*, No. 04-08-00911-CV, 2010 WL 2403579, at *8 (Tex. App.—San Antonio June 16, 2010, pet. denied) (mem. op.) (party's testimony about attorney's hourly rate and amount she had paid was not expert testimony and could

---

[9] *See Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 262-63 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) ("Factors that a fact finder should consider when determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.").

not support attorney's fee award); *Woollett v. Matyastik*, 23 S.W.3d 48, 52-53 (Tex. App.—Austin 2000, pet. denied) (expert testimony is required to support attorney's fee award; party submitted unsworn document stating that fees were reasonable and necessary but did not produce evidence to prove reasonableness or necessity); *Smith v. Smith*, 757 S.W.2d 422, 424 (Tex. App.—Dallas 1988, writ denied) ("An agreement to pay an attorney's fee based upon a certain amount per hour is not proof of its reasonableness."). We sustain Otis's second issue on appeal. Because the evidence is legally insufficient to support the attorney's fee award, we reverse the portion of the divorce decree awarding Susan attorney's fees. *See, e.g.*, *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 166 (Tex. 2012) (because record contained no evidence that plaintiff was injured by defendant's failure to pay for medical treatment, court rendered judgment that plaintiff take nothing on theory).

### Conclusion

We have sustained Otis's issues on appeal. We therefore reverse the portions of the divorce decree awarding Susan one-half of the cash surrender value of the Midland Life Insurance policy (paragraph W-8) and awarding Susan $10,458 in attorney's fees (paragraph 18). We affirm the remainder of the decree.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland
  Concurring and Dissenting Opinion by Justice Pemberton

Affirmed in Part; Reversed and Rendered in Part

Filed: January 14, 2016